# BREWER v. SLATER.

BILLS AND NOTES; BONA FIDE PURCHASERS; MORTGAGE AND DEED OF
                    TRUST NOTES; TRUSTEES.

1. Circumstances of suspicion only are insufficient to charge the holder
   of a promissory note for value with knowledge of its invalidity as
   between the maker and payee.
2. While reference on the face of a promissory note to the fact that it
   is secured by mortgage, may be sufficient to call attention to any
   restraining or qualifying words of the mortgage having special re-
   lation to the note, and affecting its negotiability, and require that
   the two be read and interpreted together, the negotiability of the
   note, in the absence of such words, is not affected; and the debt
   evidenced by the note gives character to the mortgage and protects
   it from the equities between mortgagor and mortgagee on behalf
   of a *bona fide* holder of the note for value.
3. The trustee in a deed of trust may become the purchaser and *bona
   fide* holder for value of the promissory note secured by the deed of
   trust, his duty as trustee concerning only the security and not the
   debt; and the rule that forbids his purchasing the trust property
   has no application to his acquisition of the note in a transaction
   with its owner, otherwise free from taint.

        No. 1032.   Submitted January 23, 1901,   Decided March 7, 1901.

. HEARING on an appeal by the complainant from a decree
of the Supreme Court of the District of Columbia dismissing
a bill in equity for the cancellation and surrender of a
contract, promissory note and deed of trust.    *Affirmed.*

    The COURT in its opinion stated the case as follows:

    The original bill in this case was filed by William H.
Brewer, May, 1899, to obtain cancellation, upon charges of
fraud and want of consideration, of a contract between him
and Robert Y. Slater, a promissory note founded on the same,
and a deed of trust given by him to secure said note. By
the terms of the contract, made June 3, 1898, Robert Y.

Slater undertook to relieve certain lots belonging to complainant in the city of Washington from the general and special taxes that had been assessed against the same during previous years, and to pay all costs, expenses and attorney's fees incurred in so doing. In consideration of said undertaking, the complainant agreed to execute his note for $450 payable to the order of said Slater three years after date with 6 per cent. interest, semi-annually, and to secure the same by trust deed upon said lots. The said Slater further agreed, in the event of his failure to settle or cancel said taxes, which amounted to $900, " to refund to said William H. Brewer $450 and interest that may have been paid thereon." The note was made and delivered on the same day, and the trust deed executed as stipulated. On the margin of the note the following words were written or printed: " Secured by deed of trust on a part of lots 127 and 128, square 244, Malcolm Hufty and John G. Slater, trustees." The deed of trust was in the ordinary form, providing for the possession of the grantor until default, and for the sale of the lots by the trustees in case of such default, at public auction upon such notice as they might deem advantageous and proper. Hufty was made a party as trustee; but by subsequent amendment, Laura V. Dann was made a party defendant, and the averment made that she and Hufty claimed to hold the said note as assignees of Slater. Their answers denied knowledge of the fraud alleged in the transaction between Brewer and Slater, and set out the facts through which they had become holders of the notes, as indorsees of Slater, for value and before maturity.

There is no substantial conflict in the evidence relating to these defenses. It appears that on August 25, 1898, Slater applied to Hufty for a loan of $1,000, offering as collateral security therefor the note aforesaid, a like secured note of Frere and German for $750, and what has been called the Gladmon tax sale certificate showing a purchase of certain property for the sum of $39. Hufty reported the offer to Laura V. Dann, a client for whom he often made investments. She advanced $1,000 to Slater, who executed

4

his note to her therefor, and indorsed and delivered the collateral security aforesaid. Slater's note was extended from time to time, and, upon final failure to pay, the sale of the collateral was threatened. Being unable to pay, Slater, in order to prevent the sale, offered to transfer all of his interest in the said collateral securities to Hufty if the latter would procure the surrender of his note. Hufty was at the time indebted to Mrs. Dann for a loan of $600 for which she held his note, secured by the deposit of collateral securities of the aggregate face value of $900. On March 15, 1899, by agreement with Mrs. Dann, Hufty received the Slater note from her and delivered it to Slater, who relinquished his interest in the collaterals to Hufty. The latter also obtained the surrender of his $600 note by Mrs. Dann, and executed to her a new note for $1,600. This she accepted, retaining all of the collateral aforesaid as security for its payment. On July 1, 1899, Hufty paid Mrs. Dann the sum of $1,000, which was credited upon his note, and she delivered to him the " Gladmon certificate," which he sold for the sum of $600. June 22, 1900, the bill was dismissed, without prejudice to the complainant's right of future suit against Robert Y. Slater alone, and from that decree this appeal has been prosecuted.

*Mr. Chas. Cowles Tucker* for the appellant:

1. The appellees Hufty and Dann were not, within the meaning of the commercial law, or law merchant, *bona fide* purchasers for value for a valuable consideration and without notice, and, as such, entitled to all the protection which that law accords them. When the note was first delivered by Slater as a part of the collateral to secure his note for $1,000, it was delivered to Hufty as the attorney for Mrs. Dann. She, therefore, is chargeable with whatever notice, actual or constructive, he had of the infirmities of the paper. When, later, Hufty assumed Slater's debt, and became the owner of the collaterals, including the Brewer note, subject to the claims of his client Mrs. Dann, the relation of attorney

and client which had existed between them was not changed, but the relation of debtor and creditor was superadded. In the whole transaction Hufty acted as attorney or agent for Mrs. Dann, and we therefore submit that with respect to this note, they stand in each other's shoes. Mrs. Dann can claim no greater rights than Hufty, and he can claim no greater right than she.

2. The note in question is not, strictly speaking, commercial or business paper. Such paper is designed to pass from hand to hand, during its short life of thirty, sixty, ninety days, and to perform the same functions as bank notes and money. The interests of commerce and trade demand that parties taking it in exchange should have the high degree of protection which the law merchant affords them. The note in suit is paper of essentially different character. It was payable three years after date and showed upon its face that it was secured by a deed of trust to two trustees, contemporaneously made.

"The note and mortgage are to be construed together as if they were parts of one instrument, when they were to be made at the same time, and in relation to the same subject, as parts of one transaction constituting one contract. They explain each other so far as the indebtedness is concerned. * * * The mortgage may describe the debt as well, and thus may qualify the terms of the note." 1 Jones on Mortgages, Sec. 71. In *Strong* v. *Jackson*, 123 Mass. 60, the court say: "It is quite clear that a note payable five years after date, with a memorandum upon it that it is secured by mortgage upon real estate, is not what, by men of business, is usually denominated commercial or business paper; and we think there is a material distinction between securities of this kind and strictly mercantile paper, and that such paper as this may be subject to equities when strictly mercantile paper would not be; not that the rule of law is different; but what would attract no attention in relation to purely business paper should attract attention in paper of this description." In *Crosby* v. *Grant*, 36 N. H. 273, the court say: "The general proposition that the note;

in order that it may be protected against equities as between prior parties, must be taken in the usual course of business, is undoubtedly correct.    If it be received on any other footing than as a *bona fide* purchase by the holder, independent of any previous connection *with it or with any of the parties upon it,* so that he does not take it as such paper ordinarily passes from the holder to the indorser upon a purchase and sale of the security, then he takes it not in the usual course of business, and consequently subject to the same defenses as if negotiated after dishonor."

3. Hufty, the trustee in the deed of trust, took the note with knowledge of his trusteeship — knowing of his connection with the maker of the note — knowing that the latter was his *cestui que trust* to whom he owed a high duty as trustee.    Can it be said that he took the note as notes ordinarily pass by purchase and sale?    His duty as trustee prevented him from so taking it.    26 A. & E. Encyc. of Law (1st ed.) p. 878, citing *Long* v. *Long,* 79 Mo. 644; *Gimbel* v. *Pignero,* 62 Mo. 240; *In re Mayfield,* 17 Mo. App. 684; Jones Mortg. (4th ed.) 1771.

4. It is not necessary for the purpose of appellant's case for him to contend that the fact that the trustee in a deed of trust is the owner of the debt secured will invalidate the power of sale.    It has been held that it will not; because the effect of such ownership is merely to render his position that of a mortgagee with power of sale.    See *Cassady* v. *Wallace,* 102 Mo. 575; *Foster* v. *Latham,* 21 Ill. App. 165, and *Darst* v. *Gale,* 95 Ill. 513; *Carey* v. *Brown,* 62 Cal. 373.    But this is the extent to which these cases go; and in one of them Lord Eldon is quoted as saying that the making of the beneficiary in a mortgage a trustee to sell, is by no means a prudent thing to do; while in another, such an arrangement is mentioned as a circumstance imposing upon the trustee the burden of establishing clearly that the transaction is free of all suspicion.    The question here is, not whether the power of sale in the deed of trust is invalid, or whether the trustee Hufty, by acquiring the note from one of his *cestuis que trust,* the payee of the note, is precluded from enforcing it against

his other *cestui que trust,* the maker, but it is whether, when he thus acquires the note, and makes himself the mortgagee with power to sell, he does not step into the shoes of the payee of the note, Slater, and take it subject to equities existing between the latter and the maker, Brewer. If no such equities existed; if the note had been given for value; if it had not been fraudulently obtained, Hufty could recover on it as against the maker, or he could foreclose the deed of trust, although he could not purchase the property himself upon the sale. *Easton* v. *German-American Bank,* 127 U. S. 532. Hufty's position as trustee was to hold himself aloof from the transaction between his two *cestuis que trust,* Brewer and Slater; to take no part in it by which he would profit by his position as trustee, except in the matter of commissions as fixed by the deed of trust; to permit his *cestui que trust,* Brewer, to continue in the possession of the property under certain conditions; to sell the property, in default of payment of the debt secured, *upon such terms and after such public advertisement as he and his co-trustee might in their discretion deem advantageous and proper.* Hufty's trusteeship under this deed of trust, of itself, renders it impossible for a court of equity to invoke in his favor the strict rules of the law merchant which accord such ample protection to *bona fide* purchasers for value of mercantile or business paper in the open market. And when we add to the circumstance of his being a trustee, the many circumstances disclosed by the testimony, showing his intimacy in business transactions with Robert Y. Slater; the fact that he had acted and was acting for him as his attorney; the fact that Slater at the time of this transaction was a young man of only twenty-one years of age, with no money or property that would indicate that he had acquired these collaterals which Hufty took from him in a legitimate manner; the fact that the note was evidently signed by an illiterate and uneducated person, and the fact that Slater was not even asked by Hufty where he got the note, we have a case in which Hufty should not be allowed to successfully maintain in a court of equity the position of an innocent purchaser for value of this

note; especially when by so doing he is placed in the position of being able to make a large profit out of the fraud which Slater perpetrated upon Brewer.

5. So far, it has been assumed, for the purpose of argument, that Hufty gave value for the deed of trust note in controversy. As a matter of fact what did he give? He claims to have acquired the Brewer note from Slater, together with the Frere and German note and the Gladmon certificate, and to have paid for them by giving his note to Mrs. Dann in place of Slater's note, which was returned to him. It may be said that he has paid Mrs. Dann $1,000, but $600 of that he owed her, having borrowed that sum personally from her; and the difference between that sum and the $1,000 paid her, namely, $400, he paid out of the proceeds of the sale of the Gladmon certificate, for which he received $600 in cash, which leaves him already $200 ahead. But, it will be said, he still owes Mrs. Dann $600. If he does, there is the Frere and German note to pay it with, or this court can readily provide for its payment by directing the sale of the $750 note secured by deed of trust, and so prevent Brewer from suffering the consequences of the fraud perpetrated upon him. All of the parties are before the court and we submit it is strictly within the province of this court, as a court of equity, to adjust their several rights.

Mr. *Mason N. Richardson* for the appellees, Malcolm Hufty and Laura V. Dann.

There was no appearance for the other appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

There is no occasion to discuss the evidence offered to show that the execution of the contract, note and trust deed was obtained by Slater through fraud practiced upon complainant. Robert Y. Slater testified as a witness, but it does not appear from the record that he answered the bill; and there has been no appearance for him on this appeal. As-

suming that the complainant is entitled to relief as against
Slater, the question for determination is, whether Mrs. Dann
and Hufty are to be regarded as *bona fide* holders of the
complainant's note through their transactions with Slater.

The proof shows that Mrs. Dann came into the possession
of the note shortly after its utterance and before any real
suspicion seems to have arisen in the mind of Brewer that
he had been imposed upon by Slater. She paid a valuable
consideration, and it is not contended that she had actual
knowledge of any fact sufficient to lead her to doubt the
consideration of the note, or the fairness of the means by
which Slater had obtained it. Nor does it appear that Hufty
had actual knowledge of the facts of the transaction, or that
there was any claim of imposition therein affecting the obli-
gation of the note, either when he effected the loan by Mrs.
Dann, or at the time when he himself became the owner of
the note subject to the lien of Mrs. Dann. An attempt was
made, however, to show such relations between Hufty and
Slater, commencing before the execution of the Brewer note
and existing throughout the later transactions, as warrant
the inference of Hufty's knowledge of the fraud practiced
upon Brewer and the consequent defect in his note. And
the knowledge thus inferred, it is contended, must be imputed
to Mrs. Dann because Hufty was her attorney and agent in
the transaction with Slater. From the evidence relied on,
it appears that Slater and Hufty occupied offices on the same
floor and very near each other; that they were both engaged,
more or less, in dealing in tax titles, certificates of sale, and
removal of tax liens, and so forth. There was evidence
tending to show some intimacy between them, and that they
were both interested in the tax sales of the property of the
Moxley estate; at any rate, Hufty represented Slater's in-
terest in the same. Slater was not an attorney; Hufty was,
and frequently represented Slater, though not in all of his
cases. It does not appear that he represented or advised
Slater in his transactions with Brewer, and there is nothing
in that transaction to suggest special need of legal assist-
ance. It was in the ordinary course of Slater's own business

which, it would seem, he was thoroughly competent to conduct through that stage. None of the papers executed by Brewer was written by Hufty and it is not pretended that he was present at any interview between the contracting parties. It is true that he was a co-trustee with John G. Slater, the father of Robert Y. Slater, in the deed of trust; but it was not made to appear that he had been informed of that intention beforehand and had consented thereto, or that he knew it afterward before he saw the indorsement on the margin of the note in the course of the negotiation of the loan of Mrs. Dann to Slater.

The position of the holder of negotiable paper for value is a strong one, and he cannot be displaced by mere circumstances of suspicion growing out of the unpopular business or even the ill reputation of his assignor. *Swift ,v. Smith,* 102 U. S. 442, 444; *Goodman v. Simonds,* 20 How. 343; *Goetz v. Bank,* 119 U. S. 551, 561; *King v. Doane,* 139 U. S. 166, 173.

Hufty not only denied in his answer but also in his testimany as a witness, during the taking of which he was subjected to a searching cross-examination without substantial effect, that he had any knowledge of the transactions between Brewer and Slater, save as shown on the face of the note and the trust deed, or that he had heard anything to cast suspicion upon their fairness before his interest had been acquired. There is nothing to cast the shadow of a doubt upon the testimony of Mrs. Dann that she lent Slater $1,000 upon Hufty's advice and received the note as collateral security in perfect good faith. The fact that the note was first dealt with on her behalf by Hufty is a circumstance tending in some degree, though slight, to corroborate his claim of innocence in the transaction.

He was risking the money of a client whom it was his professional duty to safeguard with every reasonable precaution; and, moreover, her ownership of money, and her implicit confidence in him, shown not only in her prompt action upon his advice, but also in her extension of credit to him individually, added strong motives of private interest to pro-

fessional obligation.. We are, therefore, constrained to hold that the circumstances relied on do not point with sufficient certainty to Hufty's knowledge of the defects affecting the note as between Brewer and Slater, either at the time of the delivery to him as collateral security for Mrs. Dann or later when assigned to him in complete ownership. Whilst tending to create suspicion, they fall short of the required proof.

The final contention on behalf of the appellants involves two propositions: (1) That the note, referring on its face to the trust deed, must be read therewith, and the two must be construed together as one instrument; (2) that, so read, Hufty, as express trustee for both parties, could not become an ordinary purchaser of the negotiable note made by one of his *cestuis que trust* and payable to the other, and must, therefore, be held as standing in the shoes of his indorser subject to all of the equities existing between him and the maker.

It requires no citation of authority to show that a negotiable note secured by mortgage upon land loses none of its attributes by reason of that fact. The mortgage is an incident of the debt and passes with its assignment. The debt evidenced by the note gives character to the mortgage and protects it from the equities between mortgagor and mortgagee on behalf of the *bona fide* holder of the note for value. The mortgage, with or without power of sale, detracts nothing from the quality of the debt which it secures, though it may add commercial value through its lien. That the note may recite or show upon its margin, which seems the general custom, that it is secured by mortgage or other lien, cannot affect the doctrine stated.

It may be true that such reference would be sufficient to call attention to any restraining or qualifying words of the mortgage, having special relation to the note and affecting its negotiability, and require the two to be read and interpreted together. But whether true or not is of no moment here, because there are no words in this trust deed that have the remotest tendency in that direction. As the undoubted power exists to constitute the mortgagee himself a trustee

to sell the security for his own benefit, and his assignee would take the note unaffected by equities that might bind him, we cannot perceive the force of the argument that would deprive an independent trustee in such an instrument of the power to purchase the secured note, or limit his right to claim all the protection afforded a *bona fide* holder for value.

As trustee for sale of the security, he is charged with no custody or control of the evidence of the debt. His duty concerns the security alone and is simply to sell in accordance with the terms of the trust when called upon by the holder of the debt after default made in payment. The salutary rule that forbids his purchasing the property conveyed to him in trust to sell for the benefit of others has no application to his acquisition of the note in a transaction with its owner, otherwise free from taint.

Whether, having purchased such a note, he may subsequently act as trustee and sell the property, involves another and a different question that does not now occur.

The decree appealed from is without error, and will be affirmed, with costs.                *Affirmed.*