**DISTRICT MOTOR CO., Inc. v. RODILL.**

No. 1190.

Municipal Court of Appeals for the
District of Columbia.

Argued March 31, 1952.

Decided May 7, 1952.

Arthur J. Hilland, Washington, D. C., for appellant.

Edmund L. Browning, Jr., Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Marcelino Rodill bought a 1949 model Hudson convertible from defendant corporation in March, 1950, for the use of his son, Arthur Rodill, who at that time was a minor. The Rodills specified that the car must be "new" although they understood that they were buying a 1949 model and not a 1950. In the contract of sale the automobile was described as a "new" car. At the time of purchase the automobile's speedometer registered 50 miles.

When Mr. Rodill registered the automobile with the Director of Motor Vehicles he was issued a "used" car title. Inquiry was then made of the defendant and resulted in a letter signed by its president, addressed "To whom It May Concern" in which it was stated that the automobile "was purchased from us new." It was admitted however that defendant had actually taken title to the car eight months before it was sold to Marcelino Rodill.

An action was brought by Marcelino Rodill "for the use of himself and Arthur Rodill," seeking to recover in tort for fraud and misrepresentation and in the alternative for breach of warranty. The trial judge sitting without a jury found for the plaintiff and awarded $200 for compensatory and $400 for exemplary damages. Defendant appeals.

1. Defendant contends it was error to admit in evidence the record of the Department of Vehicles and Traffic which showed that the automobile had first been titled to

the defendant. Counsel for defendant objected to this evidence on the ground that the record was not probative of whether or not the automobile was "new" or "used" because the Department of Vehicles and Traffic had a policy of issuing a "new" car title only when the title application is accompanied by a "certificate of origin" from the manufacturer without regard to the length of time the automobile had been in use. Objection was also made to the introduction of a record of the Vehicle Inspector of the District of Columbia purporting to show the mileage of the automobile when it was inspected while in the hands of defendant, on the ground that it was incompetent, hearsay, and authenticated not by one who took the speedometer reading and recorded it, but by someone else.

■ With regard to the first of these records, we need not decide the probative value of the policy of the Department of Vehicles and Traffic with regard to the issuance of automobile titles. But the dates when the automobile was first in defendant's hands and was first titled were certainly relevant and material to the issue of newness and the record was admissible to show those facts under the Federal Shop Book Rule.[1] In addition, there is nothing to indicate that the finding of the trial court was based on the policy of the Department of Vehicles, and there was other evidence from which the issue of "newness" could have been determined. Hence the ruling was not erroneous.

■ The record of the Inspector of Vehicles contained entries made by several District of Columbia employees at the time the vehicle was inspected. One of these was an entry showing that the speedometer indicated that the car had been driven 348 miles. Plaintiff sought to authenticate this record by a witness who had neither observed the speedometer nor made the entry; he was the custodian of the record. This witness was clearly competent to prove the record. Municipal Court Civil Rule 44.

■ Nor do we think it can be said that the recordation of what was observed from a speedometer calls for an opinion which can only be given by him who saw it. It would be difficult to conceive of a matter less dependent on opinion than the numbers on a speedometer, or of a record which is more " * * * a product of routine procedure and whose accuracy is substantially guaranteed by the fact that the record is an automatic reflection of observations."[2] Under the Federal Shop Book Rule this record was properly received in evidence.[3]

■ 2. Defendant next contends that the finding that the car was not new is contrary to the evidence and to law. The sole defense was that the automobile was in fact "new." Plaintiff and his son expressly asked for a new automobile and the one here involved was thus represented to them. There was competent evidence from which the trial court could have found that the automobile had been in defendant's hands some eight months before being sold to plaintiff and that about ten days after being acquired by defendant dealer the speedometer showed that the automobile had been driven 348 miles. There was also evidence tending to show that an automobile similar to the one sold plaintiff was being driven by defendant's president for one or two months after the time it was acquired by defendant. The witness who gave this testimony said that the car he saw defendant's president, Mr. Haller, driving bore D. C. dealer tags No. 463, when in fact the dealer's tag was numbered 364 on the car sold to plaintiff. Mr. Haller admitted that he drove the car "some", but was unable to recall to what extent. It was also admitted by the defendant that the original speedometer had been removed and replaced by another before the car was sold to plaintiff.

Defendant does not contend that whether or not the automobile was new was a question of law; it takes the position that the term "new" is relative, that the evidence did not prove that the automobile was not new and hence plaintiff did not sustain his

1. 28 U.S.C. § 1732 (Supp.1951).

2. New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 72, 147 F.2d 297, 303.

3. See Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467.

burden of proof. But from the evidence as above outlined there can be no doubt that the trier of the facts was justified in finding that the automobile sold to plaintiff was not "new."

3. A more serious question arises from defendant's claim that it was error to include an award of punitive damages in the finding. Defendant contends that to justify such award the complaint must allege and the evidence must establish that the defendant "acted wantonly, or oppressively or with such malice which implies a spirit of mischief or criminal indifference to civil obligations." [4] We understand defendant's position, as revealed by counsel's brief and oral argument to be: (1) the award of the trial court was based on a finding of bare fraud and bare fraud is insufficient to support the award because the law requires that defendant must have acted maliciously, and this means actual malice in the sense that defendant bore ill will or hatred toward the plaintiff; (2) the allegations of the complaint were insufficient to support punitive damages; (3) in any event the evidence does not support a finding of fraud, because defendant's agents believed the car to be "new" in fact.

■ We are satisfied that a case founded on fraud or deceit may support an award of exemplary damages. Greene v. Keithley, 8 Cir., 86 F.2d 238, and authorities there cited. As that decision points out, courts have used many expressions in describing the elements that must be present before punitive damages are proper; and the damages are colored by the character of the tort in connection with which the particular language was used. But we know of no case involving fraud as a basis for exemplary damages which holds that there must be personal hatred or ill will by the defendant toward the plaintiff.

Appellant relies on Minick v. Associates Inv. Co., 71 App.D.C. 367, 110 F.2d 267, 268. There it was alleged that the defendant had wilfully, wantonly and maliciously stopped payment of a check given in payment of an automobile repair job. The

court held that this was the equivalent of saying that it had wilfully, wantonly and maliciously breached its contract to pay the charges. The decision held that no punitive damages would be allowed for breach of contract regardless of defendant's motive and that plaintiff was confined to interest as the only recovery for the breach in excess of its actual loss. The opinion also contained this statement: "Even in a tort case, except perhaps where the complaint sets out circumstances of extreme aggravation, punitive damages are not allowable." Supporting this last statement the opinion cited Ballard v. Spruill, 64 App.D.C. 60, 74 F.2d 464, 466, certiorari denied, 302 U.S. 764, 58 S.Ct. 477, 82 L.Ed. 594. There the same court had ruled that punitive damages were recoverable where the wrongful act complained of was "characterized by some such circumstances of aggravation as willfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or gross fraud on the part of the defendant." The latest decision on the subject in this jurisdiction is Chesapeake & Potomac Telephone Co. v. Clay, D.C.Cir., 194 F.2d 888, 891. There the plaintiff had charged that the telephone company had breached its contract to furnish reference service of telephone calls. He based his claim on both tort and breach of contract. The court held that it was material to determine whether the breach of contract was a tort because "punitive damages are not awarded for breach of contract unless it was tortious in character." The court pointed out that the evidence indicated good faith on the part of the defendant and that their negligence seemed to have been inadvertent and that, "It does not appear that they acted maliciously, wantonly, oppressively, or with a spirit of mischief or criminal indifference to civil obligations * * *." Therefore punitive damages were held improper.

■ Thus we see that the law in this jurisdiction recognizes that any one of the following, characterized in Minick v. Associates Inv. Co., supra, as circumstances of extreme aggravation, constitutes a legal ba-

4. Citing Lake Shore & Michigan Southern Ry. Co. v. Prentice, 147 U.S. 101, 107, 13 S.Ct. 261, 37 L.Ed. 97.

sis on which punitive damages may be awarded: wantonness, oppressiveness, maliciousness, recklessness, gross fraud, gross negligence, a spirit of mischief, or criminal indifference to civil obligations. In this connection we think it has been correctly said that, " * * * in cases of fraud and deceit punitive damages may be awarded where legal malice is present. * * * Moreover, by legal malice the courts have in mind *simply the accepted theory of the intentional doing of a wrongful act without just cause or excuse, and not the necessity for the showing of any spite or ill will,* or that the particular act was willfully or wantonly done." (Emphasis supplied.) Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, 1088, quoted with approval in Rinehart v. Joe Simpkins, Inc., Mo.App., 240 S.W.2d 962, 968. Indeed it has been said that, "If the injury was inflicted through fraud, this alone affords grounds for exemplary damages * * * since in such a case the injury is necessarily malicious."[5] Hence the acts of fraud and deceit need not be malicious in the colloquial or dictionary sense: a plaintiff need not show personal grudge or spite but merely the intentional doing of a wrongful act without just cause or excuse. Furthermore, defendant's acts of deceit, set forth elsewhere in this opinion, particularly the deliberate switching of speedometers, were such as to justify a finding that the fraud practiced upon the Rodills was wilful, deliberate, and even gross in nature.[6]

■ It should be borne in mind that once it is determined that there is a legal basis for punitive damages, whether or not such damages shall be awarded is within the peculiar province of the jury. 1 Sedgwick, Damages, § 347 et seq. (9th ed. 1920). Hence though such damages will not be awarded as a matter of course when one of the above elements are present they *may* be allowed when the trier of the facts (in this case the judge) feels that the wrong is of such a nature and degree that an example, by way of a deterrent and a warning, is justified in the public interest.

■ We now consider the sufficiency of the complaint. It alleges that, " * * * the representations * * * that the car was new were made falsely and fraudulently * * * well-knowing that they were false, and that the said representations were made and the mileage indicator turned back for the purpose of inducing Plaintiff to purchase the said automobile, and that Plaintiff * * * believed and relied upon said misrepresentations to their damage. * * " The complaint demanded " * * * exemplary damages, for the fraudulent misrepresentation of defendant as heretofore averred. * * * " Since fraud provides a basis for the recovery of exemplary damages it follows that an allegation of fraud is sufficient on the issue of such damages.

■ As to the sufficiency of the evidence: Appellant argues that the evidence does not support a finding of fraud because its agents actually believed the car to be new. We think appellant overlooks the fact that the speedometer had been replaced before the sale to plaintiff and that at the time of the sale the substituted speedometer did not reflect the true mileage that the car had been driven. Neither of the Rodills was advised of this fact by defendant dealer. At the time of sale the speedometer as observed by the Rodills registered only 50 miles, but there was evidence from which the trial court could have found that the automobile had actually been driven many times that number of miles. It was important to the Rodills that the car be a new one and certainly the number of miles it had been driven was material to the question of newness. A buyer is entitled to rely on a speedometer reading to determine the all-important factor of mileage unless he has been put on notice, and the dealer is thereby under a duty to disclose his knowledge relating to the falsity of what the speedome-

5. 1 Sedgwick, Damages, § 367 (9th ed. 1920). This view is supported by Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 116 F.2d 708. See also Atkinson v. Dixie Greyhound Lines, 5 Cir., 143 F.2d 477, certiorari denied, 323 U.S. 758, 65 S.Ct. 92, 89 L.Ed. 607; and Scalise v. National Utility Service, 5 Cir., 120 F.2d 938.

6. See annotation, 165 A.L.R. 616 and cases there cited.

ter shows. The act of defendant's agents was an act of deceit, calculated to destroy or conceal evidence highly significant to the Rodills on the question of the automobile's mileage, and hence its newness. It cannot be doubted that removal of the original speedometer and substitution of a new one had the effect intended: it destroyed or at any rate seriously interfered with the Rodills' freedom of decision in the matter.

Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, is exactly in point. This language, 93 S.W.2d at page 1086, is especially pertinent: "Both reason and precedent tell us * * * that a representation with reference to the mileage of an automobile is a representation with reference to a material fact, and that it is none the less a representation of such a material character if made through the medium of turning back the speedometer * * *." Also exactly in point and reaching the same conclusion is the recent decision in Bell v. Graham, 105 Cal.App.2d 765, 234 P.2d 158.

There was some evidence on behalf of the defendant tending to indicate that there was a trade custom which permits the turning back or replacement of speedometers, but the same evidence also tended to indicate that when this is done the prospective purchaser is so informed. In any event the law cannot sanction a trade custom having deceit as its purpose and which gives the dealer the unfair advantage of having significant information as to the age and previous use of an automobile, and withholding it from a purchaser.

4. Defendant argues that it is not liable in punitive damages for torts of its agents. But the law is that punitive damages may be awarded against the principal for acts of its agents where the principal participated in the wrongful acts, expressly or impliedly, by his conduct authorizing it or approving it, either before or after it was committed. Lake Shore & Michigan Southern Ry. Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97. The law is no different when the principal is a corporation. An officer of a corporation " * * *

actually wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it that any wanton, malicious or oppressive intent of his, in doing wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself". Id. 147 U.S. at 114, 13 S.Ct. at page 265.

There was evidence from which the trial court could have found that both the president and treasurer of defendant corporation knew that the speedometer at the time of the sale to the Rodills did not indicate the actual mileage of the automobile. Moreover, defendant's president admitted knowledge of a switch in speedometers of other automobiles being put up for sale on other occasions. It is thus apparent that the evidence was sufficient to bring the case within the test quoted above.

5. Finally, it is argued that the action was not brought in the name of the real party in interest as required by Municipal Court Civil Rule 17(a) because the tort, if any, was against Arthur Rodill and he is the one entitled to relief therefor. It is contended that the designation of Marcelino Rodill "for the use of himself and Arthur Rodill" is insufficient. Arthur had become of age when the action was brought.

During the course of the trial, plaintiff's counsel indicated that he was dissatisfied with the designation of the Rodills and offered to amend to include Arthur as a party plaintiff in his own right. This offer was later renewed although it was never made in the form of a motion. At the argument of the motion for new trial counsel for defense objected to an amendment to include Arthur Rodill as a party on the ground that the trial court had lost jurisdiction. The trial judge directed defense counsel to submit a memorandum on the law involved but so far as the record shows this was never done. In order to remove any possible doubt that defendant is protected by the judgment, Arthur Rodill should be added as a party plaintiff when the case is returned to the trial court.

Affirmed.