**UNITED SECURITIES CORPORATION,**
**Appellant,**

**v.**

**William B. FRANKLIN and Myrtle B.**
**Franklin, Appellees.**

**No. 2885.**

Municipal Court of Appeals for the

District of Columbia.

Argued Feb. 19, 1962.

Decided May 3, 1962.

---

Bernard T. Levin, Washington, D. C., with whom Albert Ginsberg, Washington, D. C., was on the brief, for appellant.

Kaletah N. Carroll, Washington, D. C., for appellees.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

HOOD, Chief Judge.

Upon a claimed default in payment on a conditional sales contract for the purchase of an automobile, plaintiff, holder of the

note and assignee of the contract, repossessed the automobile and after resale sued for the deficiency. Defendants' answer alleged that they had been induced to purchase the automobile through the false representations of the seller, and denied that they were delinquent in their payments at the time of the repossession. By counterclaim defendants sought compensatory damages for the repossession, punitive damages for fraud in the sale, and the value of a sportcoat alleged to have been in the automobile when it was repossessed.

The trial court, sitting without a jury, awarded plaintiff $152.96, computed on the balance due on the contract less unearned finance charges, unearned insurance premiums, the proceeds from the resale, and the value of the sportcoat. At the same time, the court awarded defendants punitive damages of $500 for fraud in the sale and punitive damages of $500 for the wrongful repossession, or a net finding for defendants of $847.04.

Plaintiff's contentions on this appeal are directed primarily to the trial court's finding that the sale was fraudulent and that it should be held responsible for the seller's fraud. The court's award of punitive damages for fraud is challenged on the ground that it is inconsistent with the award to plaintiff of its deficiency judgment; and the award of punitive damages for wrongful repossession is challenged on the ground that only compensatory damages were sought.

■ There was in this case the same alteration of terms, the same representation that the contract being signed by the purchaser was the same as the one he had previously signed, and the same sleight of hand which this court held to be fraud in Bob Wilson, Inc. v. Swann, D.C.Mun. App., 168 A.2d 198. The testimony showed that the favorable terms originally offered were the material inducement for entering into the contract, and that the second contract was signed in reliance on the representation that its terms were identical with the first. We are satisfied that the trial court's finding of fraud in the sale was supported by the clear and convincing evidence required. Cherner v. Hall, D.C. Mun.App., 161 A.2d 141.

Plaintiff further contends that if the sale was fraudulent it was the fraud of the seller, Bob Wilson, Inc., and not that of the plaintiff finance company. The court found, on the contrary, that United Securities Corporation purchased the note with actual or constructive knowledge of the methods used by Bob Wilson, Inc., in obtaining defendants' signatures on the note and contract; that United Securities was not a holder in due course but was, to all intents and purposes, a party to the agreement between the seller and defendants. See Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S.W.2d 260, 128 A.L.R. 726.

In arriving at this conclusion, the court had before it the annual reports of both corporations to the District of Columbia Superintendent of Corporations. It is unnecessary to detail the findings gleaned from these reports. They show an overlap in corporate directors and officers, and in corporate addresses, sufficient to constitute one element in the overall picture of corporate identity and control.

■ In addition to the corporate reports, the court admitted in evidence and considered a certified copy of a Federal Trade Commission consent order, signed August 24, 1960, in which two of the principals in United Securities admitted that they "formulated, directed and controlled the acts and practices" of Bob Wilson, Inc. That the order was signed some sixteen months after the alleged fraud in this case and was directed at certain advertising policies of the seller, and that Bob Wilson, Inc., was at that time trading as "Dan Brown," does not render the order inadmissible to shed light on the policies and acts of the named individual officers at the earlier date. The consent order was properly admitted in evidence, not as an admission that the corporate and individual

defendants were guilty of the specific practices with which they were charged,[1] but as an admission that the named individuals did formulate, direct and control the acts and practices of Bob Wilson, Inc. "While facts assumed to be true for the purpose of compromise are ordinarily not competent as admissions against interest, a distinct admission of a fact will not be summarily excluded simply because it was made in connection with an effort to compromise." Nau v. Commissioner, 6 Cir., 261 F.2d 362; McCormick, Evidence § 251.

■ Plaintiff contends that this admission, taken alone, does not show that these individuals were working for or in the interest of United Securities Corporation, or that United Securities ratified these acts. But when persons intimately associated with one corporation admit control of and responsibility for the acts of a second, and when the two corporations are closely related in daily commercial intercourse, the burden is upon such persons to come forward with evidence of the precise scope of their authority. In the absence of such evidence, the trier of fact would be justified in concluding that they were acting in the interest of both corporations. Mammoth Oil Co. v. United States, 275 U.S. 13, 52, 48 S.Ct. 1, 72 L.Ed. 137.

At trial counsel for defendants offered in evidence the records of cases filed in the Municipal Court involving Bob Wilson, Inc., either as sole defendant or as co-defendant with United Securities Corporation, in order to show a course of conduct on the part of these organizations and those connected with their direction, control and operation. When it appeared that in none of the cases were the complaints filed before the alleged fraudulent sale in the instant case, the court refused to admit the records in evidence, since the finance

company could not be charged with notice of complaints filed *after* its purchase of the Franklins' note and contract. Nevertheless, the court in its written opinion after trial took judicial notice that Bob Wilson, Inc., and the present plaintiff had been involved in many cases filed in the Municipal Court in recent years. The court stated that "acts of fraud on the part of this seller have been alleged so many times that the plaintiff can not reasonably be said to be without notice that the transactions of Bob Wilson, Inc. deserve the closest scrutiny."

■ We take this statement to mean that judicial notice was taken not of the records in other proceedings, but of a "fact notorious in the community,"[2] i. e., the frequent allegations of fraud against Bob Wilson, Inc. Passing the question of whether the practices of Bob Wilson, Inc., have achieved the requisite notoriety in the community, we are of the opinion that the court went too far in treating allegations of fraud as "facts" sufficient to put United Securities on notice of the fraud practiced on these defendants. Whether such allegations are facts can only be determined after a trial and the taking of testimony. The mere allegation is not proof of the matters complained of. "The position of the holder for value of negotiable paper is a strong one, and he cannot be displaced by mere circumstances of suspicion growing out of the unpopular business, or even the ill reputation of his assignor." Brewer v. Slater, 18 App.D.C. 48, 56; see also Fabrizio v. Anderson, D.C.Mun.App., 62 A.2d 314.

■ However, this error was not prejudicial, since the court regarded as persuasive the evidence of the unity of control between the two corporations[3] and the admissions in the Federal Trade Commission consent order. The evidence sup-

---

1. Cf. Procedures and Rules of Practice for the Federal Trade Commission (October 19, 1961), 16 C.F.R. § 1.55.

2. 9 Wigmore, Evidence § 2583.

3. See Brooks v. Auto Wholesalers, D.C. Mun.App., 101 A.2d 255, 258.

ports the conclusion that officers and directors of United Securities Corporation at the very least knew of and countenanced the fraudulent acts practiced in this case.

Because defendants kept the automobile and made three payments on it after discovering the fraud, the trial court held that they had ratified the contract and awarded plaintiff its deficiency judgment. Before this court plaintiff argues that the lower court could not consistently find that defendants had ratified the contract and still award them punitive damages for the fraudulent sale.

■■■■ Assuming that the defendants so far treated the car as their own as to affirm the contract, such affirmance or ratification only precluded them from subsequently seeking rescission of the contract.[4] Upon discovering the fraud, the party defrauded may elect to rescind the contract or to perform according to its terms. But our review of the authorities persuades us that there is no inconsistency between affirmance and an action in tort for fraud in the inducement.[5] By suing in tort, the defrauded party "does not seek to undo the fraudulent transaction but claims sufficient compensation to make his position as good as it would have been had he not entered into the transaction at all." 5 Williston, Contracts 4264.

■■■■ Continuing performance of contractual obligations, without more, does not constitute a waiver of the remedy in tort for fraud. To find such a waiver there must be additional evidence of some conduct on the part of the person defrauded which indicates an intention to abandon the remedy in tort[6] or which would make it inequitable to allow him to seek further redress from the courts.[7] Here the defendants protested the substitution of the second contract as soon as possible after learning of it. They were told, in so many words, that they were "stuck" with it. Unacquainted with their rights, and requiring the daily use of an automobile in the absence of convenient public transportation, they accepted that reply and thereafter attempted to comply with the terms of the contract. By doing so they affirmed the contract, but were not foreclosed from counterclaiming for damages when sued for failure to perform their obligations under the bargain. 5 Williston, Contracts 4268.

■■■■ The testimony concerning repossession of the automobile showed that defendants defaulted on the regular monthly payment due August 7; that they were advised that it would be "all right" if the payment were placed in the mail on September 1; that the payment was mailed on that date and received by plaintiff September 2; and that the automobile was repossessed between 1:00 and 2:00 a. m. on the morning of September 2. Thereafter plaintiff refused to return the car to the Franklins unless they paid $30 in repossession costs.

4. Campbell Music Co. v. Singer, D.C.Mun. App., 97 A.2d 340; Orrison v. Ferrante, D.C.Mun.App., 72 A.2d 771.

5. See Wyatt v. Madden, 59 App.D.C. 38, 32 F.2d 838; F. H. Smith Co. v. Low, 57 App.D.C. 167, 18 F.2d 817; Hirshon v. Whelan, D.C.Mun.App., 113 A.2d 484, reversed on other grounds, 98 U.S.App.D.C. 82, 232 F.2d 339, original opinion reinstated, Hirshon v. Cecil's Bakery, D.C. Mun.App., 122 A.2d 114; Kent Homes, Inc. v. Frankel, D.C.Mun.App., 128 A.2d 444; Woodmont, Inc. v. Daniels, 10 Cir., 274 F.2d 132, certiorari denied 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900; Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., 116 F.2d 823.

6. As where the contract is wholly executory at the time of the discovery of the fraud, and the defrauded party insists on performance. Simon v. Rossier, D.C. Mun.App., 127 A.2d 394. But even in such a case there may be no waiver if the defrauded party is "unable to recede from his situation without prejudice." Horning v. Ferguson, D.C.Mun.App., 52 A.2d 116, 119.

7. See, e. g., Hampton v. Suter, Ky., 330 S.W.2d 402.

From these facts the court properly concluded that the default in the payment due August 7 had been waived and that the waiver remained in effect at the time of the repossession. Ordinarily, a check mailed on the last day of payment, and not received on that day, is not a timely payment. But when it may be inferred from the usual course of dealing between the parties that the creditor has authorized use of the mails for payment, payment is made when a letter containing the remittance, properly addressed and with postage prepaid, is deposited in the mail. 40 Am. Jur., Payment § 36; Colonial Life & Acc. Ins. Co. v. Wilson, 5 Cir., 246 F.2d 922, 927, certiorari denied 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357. Evidence that the Franklins had made previous payments by mail, and that those payments had been credited to their account, warranted the conclusion that use of the mails had been impliedly authorized, and that the installment due on September 1 was paid when it was placed in the mail on that day. The defendants were therefore not in default at the time of the repossession, and plaintiff's act was clearly wrong and unjustifiable.

■■■■ The question remains whether the trial court properly awarded defendants punitive damages for the fraud in the sale and the wrongful repossession. The assessment of exemplary damages rested in the discretion of the trial court sitting without a jury. Riss & Co. v. Feldman, D.C.Mun.App., 79 A.2d 566. It could award such damages if the wrong was of such a nature that an example, by way of deterrent and warning, was justified in the public interest. District Motor Co. v. Rodill, D.C.Mun.App., 88 A.2d 489. Punitive damages may be assessed where the act complained of is characterized by circumstances of aggravation such as malice,[8] and an injury inflicted by fraud has been

termed "necessarily malicious." 1 Sedgwick, Damages § 367 (9th ed.), quoted in District Motor Co. v. Rodill, supra, 88 A.2d at 493. And it is settled in the federal courts that such damages may be awarded in the absence of compensatory damages.[9] With due regard for the ends sought to be achieved through exemplary damages, we cannot say the trial court improperly exercised its discretion in awarding a reasonable sum to penalize plaintiff for the fraudulent sale.

■■■ Plaintiff's counsel claims that it "came as a complete surprise" when the court's written opinion after trial included an award of $500 in punitive damages for the wrongful repossession. He points out that on this count defendants sought only compensatory damages and that the testimony at trial related only to the actual injuries suffered. Defendants, relying on Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., urge that the demand for judgment does not limit the form or amount of relief. But that rule and the parallel Municipal Court Civil Rule 54(c) are not identical; the latter provides that relief other than that sought in the demand for judgment may be granted only "upon request of the party."[10] Since defendants at no time sought punitive damages for the wrongful repossession, the trial court was precluded by Rule 54(c) from awarding them.

■■■ This court is asked, finally, to restore $201.11 in unearned finance charges which plaintiff contends was "arbitrarily deducted" in computing the deficiency judgment owed plaintiff. The contention has no merit. Since it was plaintiff's wrongful act which prevented further performance by defendants under the contract, to require them to pay the total finance charge would unfairly penalize them and confer

8. Ballard v. Spruill, 64 App.D.C. 60, 74 F.2d 464, certiorari denied 302 U.S. 764, 58 S.Ct. 477, 82 L.Ed. 594.

9. Wardman-Justice Motors v. Petrie, 59 App.D.C. 262, 39 F.2d 512, 69 A.L.R.

648; First National Realty Co. v. Weathers, D.C.Mun.App., 154 A.2d 548.

10. See Branson v. Harris, D.C.Mun.App., 100 A.2d 38.

an undeserved benefit on the plaintiff. The trial court properly deducted unearned finance charges from the balance due, and the sum deducted had an adequate basis in the evidence.

The judgment will be modified by reducing it to $347.04, and, as so modified, is affirmed.