Jess FISHER, Appellant,

v.

Nathan SINROD and Hymen H. Tash trading as Sinrod & Tash, Appellees.

No. 3361.

District of Columbia Court of Appeals.

Argued Jan. 6, 1964.

Decided Feb. 28, 1964.

Mark P. Friedlander, Washington, D. C., with whom Mark P. Friedlander, Jr.,

Blaine P. Friedlander, Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief, for appellant.

Raymond Gittelman, Washington, D. C., for appellees.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

This is an appeal from a judgment for appellees upon a complaint by appellant seeking to recover part of his loss in an investment venture based upon an alleged written agreement by appellees to reimburse him, which they subsequently disclaimed. Appellees plead lack of consideration, estoppel to assert any alleged misrepresentation, and the bar of the statute of limitations.

The trial court found there was no substantial evidence to support appellant's claim that he refrained from bringing suit because of appellees' promise to reimburse him and hence there was no consideration to support the written agreement.

Appellees, partners in Sinrod & Tash, certified public accountants working for appellant, told him about a corporation to be formed for the manufacture and sale of a game called "Capital Air Races." On October 28, 1955, after viewing the product, Fisher mailed to them his check for $2,500, representing one-half of a gross payment of $5,000 for his purchase of a one-eighth interest in the company. The corporation was formed November 8, 1955. There was conflicting testimony as to whether appellees had represented that the company had orders for 50,000 games on which they would realize a profit of one dollar per game; however, Fisher admitted that within sixty to ninety days after his first check had been mailed he became aware that the company did not have such orders or the prospects of such profits. Notwithstanding, Fisher mailed appellees a second check for $2,500 on February 13, 1956, accompanied by a letter stating that

as the venture[1] was now in an uncertain stage "which will become decisive either way during the next thirty day period * * * all possible assistance, supervision and aid" should be given the project and its inventor during this time. Fisher attended several meetings of the company directors and testified he "thought" he was a director.

In 1958 when it became apparent that the enterprise was not to be a financial success, Fisher demanded that appellees reimburse him for his losses because of alleged misrepresentations in inducing him to participate. Finally, on May 19, 1960, he secured a written "memorandum" signed by one of the partners. This "memorandum," set forth in its entirety, provided:

"MEMO TO: Jess Fisher

"SUBJECT: Investment in Capital Air Races, Inc.

"Sinrod and Tash agree to reimburse you for fifty percent (50%) of any loss attributable to the above investment after deducting from the amount of said loss, the entire amount of income tax benefit obtained from said deduction.

"Sinrod and Tash
"(signed) Hy Tash
"Hymen H. Tash

After receiving a number of letters from appellant urging remittance of his loss, computed in 1962 to be $1,443.75, Tash wrote on June 11, 1962:

"After a great deal of deliberation, I have come to the conclusion that my letter to you was the result of considerable pressure and that I should disclaim any liability as the result of the loss sustained by your investment in the Capital Air Races venture."

Originally, the only error claimed by appellant was the holding that "the settlement of a disputed claim needed other and additional consideration in order to support a contract of settlement." In his brief, however, for the first time appellant also contends that it was error not to have found that there had been a compromise and settlement of his claim which furnished adequate consideration.[2] He argues that his stated error on appeal is broad enough to cover the second one raised in his brief. Technically this might be true, except that his failure to rely on this theory in the trial court prejudiced the rights of both the appellees to meet the question by examination of witnesses and submission of additional testimony in refutation and of the trial court to consider and rule on this point. We have often held that points and theories not advanced and passed upon during trial cannot be raised on appeal. Having tried the case below on one theory and lost, appellant is not in position to present a new one before us. Baxter v. Hunter, D.C.Mun.App., 179 A.2d 376, 377; LeJohn Mfg. Co. v. Webb, D.C.Mun.App., 91 A.2d 332, 334. We do not imply that the theory now suggested would require a different result; we only say we must consider the case as we find it from the record of the trial. In reaching our decision, however, we dispose of both theories.

The only issue properly before us is whether the trial judge correctly ruled that there was no valid consideration for appellees' promise to reimburse appellant for his purchase of an eighth interest in the corporate venture. We think he did. There is nothing in the written memorandum on which appellant relies which supports his position that in consideration of appellees' promise to repay part of his investment loss, he would refrain from bringing suit. Nor does it show on its face any prior dispute which the parties had offered to com-

---

1. Webster defines "venture" as an undertaking involving chance, risk or danger— a speculative business enterprise.

2. Rommel v. West American Insurance Company, D.C.Mun.App., 158 A.2d 683, 684.

promise or amicably settle in order to avoid litigation. The memorandum at most embodies only a naked promise by appellees to pay a sum certain and, absent consideration, is not enforceable.[3]

Even going beyond the four corners of the purported agreement and considering the parol testimony of the parties, we must reach the same result. There was no statement by any witness on either side that appellant had ever threatened to sue appellees or had even considered that course of action in order to recoup his loss. The testimony in the record before us is silent on the question of consideration and shows only a promise by appellees to give back some of the money to appellant, a promise apparently induced by the considerable personal pressure from appellant motivated by what appears to have been an effort by appellees to retain the friendship and business connections of a valued client, but not as an admission of responsibility for his loss and upon a belief that the payment would be a compromise settlement of a disputed demand for which suit might be reasonably anticipated.

There being competent evidence in the record to substantiate the trial judge's ruling that the writing of June 11, 1962, lacked consideration and was therefore unenforceable, we affirm.

Affirmed.

HOOD, Chief Judge (dissenting).

In my view the essential and uncontradicted facts of this case are these. Fisher, engaged in the real estate business, was a client of Sinrod and Tash, a partnership of certified public accountants. Through the partners Fisher became interested in a newly-formed corporation and invested $5,000 in it. The corporation was not successful and Fisher made claim that he was led to invest because of some misrepresentation by Tash. Tash denied making any misrepresentation and he and Sinrod disclaimed any responsibility for Fisher's loss; but, according to Tash's testimony, they orally agreed to reimburse Fisher because of long standing relationship. Fisher continuously pressed for an agreement in writing and eventually he received the agreement quoted in the majority opinion. Sinrod testified he did not know of this agreement until the day after it was written, but he took no steps to repudiate it. Fisher wrote a number of letters asking payment in accordance with the agreement, and it was not until over two years later that Sinrod and Tash attempted to repudiate their agreement.

On the foregoing facts it appears to me that this is a case of a disputed claim, an offer to settle, and an acceptance of the offer, constituting a valid and binding agreement of compromise and settlement. The validity of the compromise does not depend upon the validity of the claim.[1]

I do not understand the law to be, as the majority implies, that there can be no valid compromise of a claim unless the claim is accompanied by an expressed threat to sue; nor do I think that the incentive for agreeing to settle a claim is material. Sinrod and Tash are experienced business men. Not only are they certified public accountants, they are also lawyers. A claim was made against them and for reasons satisfactory to them they agreed to settle the claim by payment of a specified sum of money. I think they should be held to their agreement, and I therefore dissent.

3. This is not a case in which one who has suffered a loss as the result of fraudulent misrepresentations has elected to affirm the contract without forfeiting his right to recover damages for deceit. Here appellant sues in reliance upon a new promise to reimburse him for part of his loss in a business venture. See Millard v. Lorain Inv. Corp., D.C.Mun. App., 184 A.2d 630, 632; United Securities Corporation v. Franklin, D.C.Mun. App., 180 A.2d 505, 510.

1. Rommel v. West American Insurance Company, D.C.Mun.App., 158 A.2d 683; Saunders System Washington Co. v. Kuffner, D.C.Mun.App., 75 A.2d 136.