## HILL et al. v. MARSTON.

No. 6516.

United States Court of Appeals for the District of Columbia.

Decided Feb. 17, 1936.

Paul E. Haworth and Horace S. Whitman, both of Washington, D. C., for appellants.

Paul B. Cromelin, Bolitha J. Laws, and Lowry N. Coe, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District declaring null and void two contracts for the purchase of shore lots at Manhattan Beach on Chesapeake Bay and awarding recovery of money paid under those contracts by appellee (plaintiff below).

According to the findings of fact, plaintiff, a lady 70 years of age, became acquainted with Broussard, one of the defendants, and his sister-in-law, Mrs. Landry. Defendants Broussard, Hill, and Harrison were partners trading as the Manhattan Beach Company, with an office in the District. They and the other defendant (Upper Ashburton Realty Company, Inc.) were engaged in promoting the sale of shore property purporting to belong to the realty company and located at Manhattan Beach on Chesapeake Bay. The beach

company had an arrangement with the realty company whereby the beach company would pay the expenses incident to the sales, the net receipts to be divided equally between the corporation and the partnership. Broussard and Mrs. Landry for more than a month prior to January 16, 1932, manifested a friendly interest in plaintiff, Miss Marston. Plaintiff discussed her personal affairs with Broussard and sought and received his advice. She made known to him that she was worried because 83 shares of capital stock of the Capital Traction Company, which she had purchased at a price in excess of $7,000, was depreciating in value. She sought Broussard's advice with reference to this stock, considering him not only a friend but a businessman. Upon the false representation that he would recoup the loss (of about $5,400) which she had sustained by reason of the depreciation of the value of her stock, he induced her to turn over to him that stock in exchange for 10 shore lots. A written contract was presented to plaintiff in the office of the beach company on January 16, 1932, by Broussard, which the plaintiff understood conformed to the oral agreement theretofore entered into. Broussard led the plaintiff to believe that defendants would take her Capital Traction stock at the valuation of $1,500 in full payment for 10 lots in block N at Manhattan Beach. Shortly thereafter Broussard induced plaintiff to pay him $1,500 cash for 10 other lots in block Z at Manhattan Beach. Broussard represented and agreed that he could and would resell all these lots at a substantial profit. On February 15, 1932, plaintiff signed the second contract in the belief that she was signing an agreement carrying into effect their understanding and verbal agreement, namely, that $1,500 was to pay in full for the lots in block Z. Plaintiff, reposing confidence in Broussard, did not read either of the contracts, relying on Broussard and considering him her friend and adviser.

Instead of providing that the Capital Traction stock and the $1,500 cash constituted the full consideration, the written contracts provided in addition for deferred payments amounting to $5,000, or a total consideration of $8,000 for the 20 lots.

A few months later, her suspicions were aroused to such an extent that she examined the contracts and immediately communicated with Broussard. Thereafter on July 20, 1932, she received from the beach company a check for $316.89. She demanded an explanation as to what the check represented. She was informed that three of her lots had been sold for $975 each; that the check represented a cash payment of $325 on each of the three sales, less commission on the total sale price of 22½ per cent. netting her $105.63 out of $325 alleged to have been received by defendants on each of the sales.

The market value of the Capital Traction stock at the time it was turned over to the defendants was $1,660. From the proceeds of sale of that stock only $45 was paid the supposed owner of the beach property, the realty company; Broussard received $450 as commission on the sale of the first group of lots; the balance being absorbed in other commissions. Of the $1,500 cash payment in the other transaction, Broussard received another cash commission of $450, and all but $75 of the balance was absorbed in other commissions. In other words, out of cash payments amounting to approximately $3,000, all but $120 was absorbed in commissions.

Broussard did not reveal to plaintiff that he was to receive as personal commission $450 out of the value of the Capital Traction stock and $450 personal commission out of the $1,500 cash payment; nor that he and his partners, Hill and Harrison, were to receive the entire balance after deducting Broussard's personal commission, with the exception of the payment of $45 and $75 to the realty company; nor was it revealed that appellants intended to charge a commission of 22½ per cent. on resales.

The oral understanding or agreement was the inducement for the plaintiff to execute the written contracts and to turn over to the defendants her Capital Traction stock and $1,500 cash. A position of trust and confidence existed between the plaintiff and Broussard, acting in behalf of the beach company and the realty company.

The court below found for the plaintiff, stating that the court was convinced that plaintiff was "wilfully misled by the defendant Broussard and that his conduct and his plan of entreating her into an arrangement for the resale of the lots to recoup the loss she had sustained on her Capital Traction stock had the effect to disarm her to the point that she regarded him as her confidential agent." The court

further found: "The case depends somewhat on the issue of credibility between her, on one side and Broussard and Mrs. Landry on the other. As to that issue of credibility, I find the issue in favor of the plaintiff. This means, I assume that the contract should be cancelled, null and void, and that she should recover the proceeds of the sale of the Capital Traction stock and the $1500 check which she gave in payment on the second contract, less the amount of the check which she received of approximatly $316.00."

The findings of the trial judge, after he has seen and heard the witnesses, will not be disturbed unless it clearly appears that he misapprehended the evidence or that his findings were against the clear weight of the evidence. In Pollock v. Jameson, 63 App.D.C. 152, 70 F.(2d) 756, 759, Mr. Justice Groner, in restating the above rule, said: "The trial judge saw the witnesses and heard them testify. Where the evidence was conflicting, he had the opportunity of observing their demeanor and their method of testifying and hence of weighing the truth of their respective statements. In every way he was in a better position than we are to determine where the truth lay. * * * where the judge has seen and heard the witnesses, his findings will not be disturbed unless it clearly appears that he has misapprehended the evidence or that he has gone against the clear weight of the evidence." See, also, Lipski v. Burch, 63 App.D.C. 104, 69 F.(2d) 842; Roth v. Eisinger Mill & Lumber Co., 63 App.D.C. 128, 70 F.(2d) 294.

In our view there is ample evidence to support the findings and conclusions of the trial judge in this case. Mrs. Landry, sister-in-law of Broussard, led Miss Marston to believe that Mrs. Landry's interest was that of a friend; in other words, that Mrs. Landry's interest was unselfish, and therefore her influence was more persuasive. Had Miss Marston known that Mrs. Landry's interest was that of an agent, that she was to receive a fee of "eighty-odd dollars," and that "her part in the transaction was that she took Miss Marston down to the property," her influence would have been negligible. The duplicity practiced at the outset continued to the end. Miss Marston was inexperienced in business matters, and, after her confidence had been won, she fell a ready victim to Broussard's scheming. It is significant that a copy of neither contract plaintiff signed was furnished her until several days after they were executed. Miss Marston testified, and the circumstantial evidence tends strongly to corroborate her, that, according to the verbal contracts, which she supposed were carried into the written contracts, the payments she made were in full upon the two groups of lots. "She would have had to draw on her principal" to make the deferred payments which were called for by the two contracts. Following Miss Marston's discovery that she had been deceived, the defendants gave her a check for $316.89, stating to her that this amount represented her share in the sale of three lots in block N at $975 each, with down payments of $325 on each lot, and deferred payments of $650 on each. Miss Marston was charged 22½ per cent. resale commission on the sale price of each lot, or $219.37 on each. Deducting this commission from the cash payment on each lot left Miss Marston $105.63 net on each lot. Having knowledge that his good faith was challenged, it is significant that Broussard in testifying failed to state the names of the alleged purchasers of these lots, or the dates of the resales.

The court has found, and with that finding we agree, that plaintiff was induced to sign the two contracts through fraudulent representations. The terms of the verbal understanding differed radically from the terms of the contract which she was induced to sign. In other words, there was no actual meeting of the minds of the parties. It would be a reflection on the intelligence of Miss Marston to hold that she would have signed the contracts had she known their terms. As between the parties to a written contract, the party who, though able to read, is induced through the other's misrepresentations as to its contents, to sign it without reading, may avoid it upon the ground of fraud. Stern v. Moneyweight Scale Co., 42 App.D.C. 162. The misrepresentations which induced plaintiff to sign were in regard to material facts. They must have been known to be untrue. They were made with the intent that they should be acted upon, and they were acted upon by plaintiff in the belief that they were true. These conditions, conclusively established, furnish a basis for a court of equity to set aside the contracts on the ground of fraudulent misrepresentations. Southern Development Company v. Silva, 125 U.S. 247, 8 S.Ct. 881, 31 L.Ed. 678; Lyon v. Smith, 2 App.D.C. 37; Hight v. Richmond Park Improvement

Co., 47 App.D.C. 518; Fay v. Hill (C.C.A.) 249 F. 415.

The decree is affirmed.

Affirmed.