BOB WILSON, INC., Appellant,

v.

Thomas A. SWANN, Appellee.

No. 2639.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 7, 1960.

Decided Feb. 24, 1961.

Bernard T. Levin, Washington, D. C., for appellant.

Leon Shampain, Washington, D. C., with whom Thomas B. Lawrence, Washington, D. C., was on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11-776(b).

QUINN, Associate Judge.

This appeal is from a judgment based on a jury verdict assessing against appellant, a used car dealer, $613.20 compensatory and $2,000 punitive damages for the fraudulent sale of a used car to appellee.

On October 10, 1959, appellee orally agreed to purchase a 1957 Ford from appellant. The parties did not then execute a written contract but Swann gave a cash deposit and left his old car as a trade-in. Two days later, accompanied by his wife, daughter and son-in-law, he returned to conclude the formal arrangements. According to their testimony, appellant's president, Monroe Lenoff, appeared carrying a sheaf of papers and with a pencil proceeded to enter the terms of sale on the top sheet, a blank bill of sale. Finishing this task, Lenoff took the papers and left the room for a few minutes presumably to find a pen. Upon his return, Lenoff handed the pen to Swann and directed him to sign each of the papers, representing that those underneath were merely duplicates of their agreement. Without making any effort to examine the contents, Swann signed, with Lenoff pushing back the top sheets so that only the space provided for the purchaser's signature was visible on each of the forms.

On October 14, Swann paid the balance due on his down payment and went with one of the appellant's salesmen to a notary public to acknowledge the papers. Recognizing his signature, he did as requested, although he did not see the figures written on the instruments. Then, before taking leave, the salesman asked Swann and his wife to indicate on the papers their satisfaction with the transaction. At his direction Swann signed across the face of the document on top and Mrs. Swann wrote in the margin, "We have read this contract it is correct and complete." Copies of the papers were placed in an envelope and given to Swann. Shortly thereafter, he inspected the papers and found that additional charges and interest totaling $613.20 had been inserted in the contract without his knowledge.

Appellant denies actionable fraud on the ground that appellee Swann unjustifiably relied on Lenoff's representations that the papers signed were copies of the original pencil agreement. Since the papers were freely accessible to Swann, it is asserted that he was bound to determine for himself whether those reputed to be copies actually conformed to the true understanding of the parties.

It is settled that one who refrains from reading a contract and in conscious ignorance of its terms voluntarily assents thereto will not be relieved from his bad bargain.[1] The question whether the same risk falls upon a person who has been disarmed by fraud has not received uniform treatment. The approach taken by some jurisdictions denies redress where the par-

1. Dobler v. Story, 9 Cir., 1959, 268 F.2d 274; Ray v. William G. Eurice & Bros., 1952, 201 Md. 115, 93 A.2d 272; 3 Corbin, Contracts § 607 (1960).

ty victimized neglected available means to discover the duplicity.[2] Other courts, adopting what commentators regard as the better view, afford relief where misrepresentation has induced a party to forego the ordinary precaution of investigation.[3] The fact that by so doing the party exercised less vigilance than most people would have employed under the circumstances does not protect the wrongdoer.

We need not consider here whether appellee Swann was unreasonable in trusting Lenoff's representations and in failing to insist on an examination of the papers before signing. In Stern v. Moneyweight Scale Co., the United States Court of Appeals for the District of Columbia ruled that fraud constituted a good defense to a contract which appellee's salesman had misrepresented despite appellant's apparent lack of good judgment in accepting the former's word without question.[4] Such misconduct has also served as a basis for setting aside a contract,[5] and, we believe, warrants a recovery at law.[6] The record shows that Lenoff deliberately sought to mislead Swann and was successful in the attempt. Appellant may not shield itself from the consequences of its agent's deception by saying that Swann should not have been fooled.

Affirmed.

2. See, e. g., Flannery v. Flannery, 1943, 320 Ill.App. 421, 51 N.E.2d 349; Roback v. Roback, 1953, 97 Ohio App. 415, 113 N.E.2d 898.

3. E. g., Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 1950, 183 F.2d 548, 21 A.L.R.2d 266; Peter W. Kero, Inc. v. Terminal Const. Corp., 1951, 6 N.J. 361, 78 A.2d 814; 3 Williston, Sales § 634

(rev. ed. 1948); 1 Harper and James, The Law of Torts § 7.12 (1956).

4. 1914, 42 App.D.C. 162.

5. Hill v. Marston, 1936, 65 App.D.C. 250, 82 F.2d 856.

6. See Seek v. Harris, 1942, 76 U.S.App. D.C. 404, 132 F.2d 19; Horning v. Ferguson, D.C.Mun.App.1947, 52 A.2d 116.