Robert D. SAYLOR and Minnie R. Saylor,
Appellants,

v.

HANDLEY MOTOR COMPANY, Inc.,
a corporation, Appellee.

No. 2680.

Municipal Court of Appeals for the
District of Columbia.

Argued Jan. 23, 1961.

Decided April 17, 1961.
Rehearing Denied May 15, 1961.

Louis J. Lombardo, Washington, D. C.,
for appellants.

S. Jay McCathran, Jr., Washington, D.
C., with whom Arthur C. Elgin, Washington, D. C., was on the brief, for appellee.

Before HOOD and QUINN, Associate
Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code §
11–776(b).

QUINN, Associate Judge.

This is an appeal from a directed verdict
in a suit to rescind an automobile sales contract on the basis of fraud.

In 1958, appellants, husband and
wife, discussed the purchase of a new car
with a Mr. Wolf, one of appellee's salesmen.
According to the couple's testimony,[1] the

---

1. Testing the trial court's grant of a directed verdict requires that we construe
the evidence most favorably to plaintiffs-appellants. Tobin v. Pennsylvania R.
Co., 1938, 69 App.D.C. 262, 263, 100
F.2d 435, 436; Jackson v. Capital Transit Co., 1938, 69 App.D.C. 147, 99 F.2d
380, and cases cited therein.

parties reached agreement on the terms of the sale, including provision for installment payments of $80 a month, this sum being the maximum their budget would allow. Then, handing them a conditional sales form, Wolf asked that they sign their names in the designated spaces on the paper, although the instrument had not been completed in accordance with the oral agreement. Why appellants were so incautious as to comply with a request to sign a blank form is not explained in the record. Mrs. Saylor, who at seventeen years of age handled the family's financial matters because of her husband's illiteracy, testified only that she "glanced through it," without noticing at the bottom of the paper the warning in bold print:

"Notice to Purchaser: It is against the law for the seller to permit or request you to sign this document before all blanks above have been filled in by the seller and he has signed this paper certifying that the above information is correct:"

Furthermore, appellants denied ever receiving a copy of the completed contract.

Appellants were given a "payment coupon book" by the finance company with instructions that each monthly remittance be accompanied by the appropriately numbered ticket. The first coupon, calling for a payment of $80, was paid in that manner; however, after a month had elapsed and the time arrived for the next payment, Mrs. Saylor noted that the second coupon specified that a payment of $88.15 was due, instead of $80 as agreed upon. Appellants protested to Wolf who explained that the figure was a mistake and that he would have it corrected. At his request they left the coupon book and $84 in cash with the understanding that Wolf would pay the

additional $4.15. Wolf promised that the extra four dollars would be returned to them when the error was rectified. This same procedure was used by Wolf in the three months following; on each occasion he induced them to pay $84 and with his own donation of $4.15, he paid the installment.

In July 1958, appellants received notice from the finance company that they were delinquent in their payments and they again went to appellee's place of business where they spoke with Mr. Sheehy, president of the company. Informing them that he had learned of Wolf's misconduct in several sales transactions and had discharged him, Mr. Sheehy asked that appellants again pay $84, assuring them that the contract would be corrected to provide for installment payments of $80. Appellants did as requested but the correction was never made. Sometime later, Mr. Sheehy offered to execute a new contract with payments of $84 a month; appellants refused, replying that that they could not afford to pay more than $80 on a regular basis. In August 1958 appellants were unable to pay the full sum of $88.15 and the car was repossessed by the finance company. Subsequently, the car was sold to liquidate the indebtedness and appellants brought this action to recover their loss.

This case raises another aspect to the same problem which we had occasion to consider recently in Bob Wilson, Inc. v. Swann.[2] Citing Upton v. Tribilcock[3] and Toledo Computing Scale Co. v. Garrison,[4] appellee contends that the Saylors were bound to know the contents of the contract before they signed. Appellee argues that the couple must assume responsibility for having entrusted its salesman with the transcription of the prior oral understanding of the parties on a form bearing their signature.

2. D.C.Mun.App.1961, 168 A.2d 198.

3. 1875, 91 U.S. 45, 23 L.Ed. 203. This case involves misrepresentation as to the legal effect of a writing, not of the contents of the writing itself. It is therefore inapposite to the present discussion.

4. 1906, 28 App.D.C. 243.

The proposition that one is obligated by his contract, though signed without knowledge of its terms, does not extend to situations where assent to such terms is procured by the proponent's fraud. The circumstances warranting application of this exception have apparently changed, however, as demonstrated by the divergent approaches taken in Garrison and the later cases of Stern v. Moneyweight Scale Co.[5] and Hill v. Marston.[6]

Both Garrison and Stern were suits to recover the purchase price of scales which the defendants had allegedly agreed to buy. In each, the defendants asserted fraud; it being urged in the first case that the customer's signature was obtained upon the salesman's representation that the paper was only a receipt for delivery of the scales on a trial basis, and, in the latter case, that the writing was an authorization to send the scales on approval. Nevertheless, the court reached opposite conclusions. Rejecting the defendant's stand in Garrison, the court held that the salesman's statement was not fraudulent, emphasizing that the instrument had been before the party at the time of signing and that nothing prevented him from reading it. In Stern the court acknowledged that it is the duty of every person whether he can read or not, to learn the provisions of a writing before he signs it, except where fraud is involved. On that subject the court declared:

> " * * * As between the parties to a written contract, the party who, though able to read, was induced through the misrepresentations of the other party as to its contents to sign it without reading, may avoid it on the ground of fraud. * * *"[7]

Under this broader view, reaffirmed in the Hill case, availability of the writing and opportunity to read it are not enough to es-

tablish its validity where the party was effectively persuaded to refrain from reading the contract. This is true no matter how transparent and implausible the inducement, as long as the party was genuinely deceived. Consequently, the salesman's misdescription of the instrument, disregarded in Garrison, would constitute a good defense if, accepting the statement, the customer neglected to read the paper.

Not only will relief be afforded where a party's signature is procured upon the misrepresentation that the writing before him faithfully reflects a prior oral agreement; it will also be granted to the person who delivers a signed form under the false promise that it will contain certain terms.

> "Accordingly, where a party is induced to sign a paper as a result of a false representation that it will be filled in or prepared as orally agreed, the intentional omission of terms required by the authorization to be included, or the inclusion of terms not so authorized, constitutes fraud invalidating the instrument as between the parties thereto, notwithstanding that the party signing was negligent in relying on the misrepresentation. The rule is that where one party to an oral agreement entrusts the other with the obligation of reducing it to writing, he has a right to rely upon the representation that it will be drawn accurately and in accordance with the oral understanding between them. The presentation of the paper for signature is in itself a representation that the terms of such oral agreement have been or will be embodied in the writing. * * *"[8]

This statement, supported by the logic of Stern and Hill, controls the disposition of the instant case. In his testimony Mr.

5. 1914, 42 App.D.C. 162.

6. 1936, 65 App.D.C. 250, 82 F.2d 856.

7. 42 App.D.C. at page 165.

8. Peter W. Kero, Inc. v. Terminal Const. Corp., 1951, 6 N.J. 361, 78 A.2d 814, 818.

Sheehy conceded that Wolf had deceived a number of customers, including appellants. The fact that appellants were negligent in trusting Wolf to compose the written contract accurately does not answer a charge of fraud. The court therefore erred in granting the motion for directed verdict at the conclusion of all the evidence. Accordingly, the judgment is reversed and the case remanded with instructions to grant a new trial.

It is so ordered.