Jonah L. MILLARD and James W. Fleming,
Appellants,

v.

LORAIN INVESTMENT CORPORATION,
Appellee.

No. 2997.

Municipal Court of Appeals for the
District of Columbia.

Argued May 21, 1962.

Decided Oct. 10, 1962.

Karl G. Feissner, Silver Springs, Md., for appellants.

Denver Lee Russell, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

Appellee instituted this action to recover the balance due on a promissory note executed by appellants for the purchase of an automobile from Ross Discount Motors, Inc. Appellants answered alleging that the note was obtained by fraud and misrepresentation, that appellee was not a holder in due course, and that the note was the product of usury. By counterclaim appellants sought rescission and restitution of the amount paid on the note and punitive damages for fraud, alleging a close business affinity between appellee and Ross Discount Motors, Inc. At the conclusion of all the evidence the trial court ruled as a matter of law that appellants ratified and waived any impropriety, illegality or fraud after discovering the alleged fraud and misrepsentation, and directed a verdict for appellee in its action on the note and on the counterclaim.

In August 1959, appellants went to Ross Discount Motors to purchase an automobile and were told by one Ross Rosenberg that the purchase price of the model selected was $2,195. A credit statement was taken and the following evening appellants returned and were informed that their credit had been approved. Rosenberg prepared the papers and advised appellants that when they finished signing they would owe $1,-500; that they would receive $500 for their present car as a trade-in, but that since they had no cash for a down payment, the payments would be $100 for the first four months and $75 per month thereafter. Rosenberg placed the papers in a stack and turned back each sheet so that only the spaces provided for the purchasers' signatures were visible on each of the forms.

632

Appellants signed but did not receive any copies.

The following month appellants received notices of payment on not one, but two notes, the first to appellee in the amount of $2,400 payable in $75 monthly installments, and the second to the Union Trust Company for $600 payable in monthly installments of $29, with a total monthly payment in the amount of $104. Appellants performed these obligations for three or four months, then defaulted, and the automobile was repossessed. They went to appellee and complained that their payments were in excess of what Rosenberg stated they would be, whereupon appellee said that if they paid the delinquent installment, their payments to it would be reduced from $75 to $65 per month. In February 1960, appellants paid appellee the overdue payment and a repossession charge, and the payments to appellee were thereafter reduced to $65 per month. Appellants paid the $65 and $29 monthly installments through November, but in December the automobile was involved in an accident and the tags were revoked by the District of Columbia. On the payment of $50 to the insurance company the automobile was returned to appellants, and it is presently in their possession, although the tags have not been reissued.

■■■ Assuming a sufficient corporate identity and control to give appellee actual or constructive knowledge of the business practices of Ross Discount Motors, the principal assignment of error relates to whether appellants as a matter of law ratified the alleged fraud and misrepresentation and thereby waived their defense and the basis of their counterclaim.

A party who has suffered as a result of fraudulent representations may affirm the contract without forfeiting his right to maintain an action to recover damages resulting from deceit, F. H. Smith Co. v. Low, 57 App.D.C. 167, 18 F.2d 817 (1927), or rescind the contract and recover what he has parted with. Wyatt v. Madden, 59 App.D.C.

38, 32 F.2d 838 (1929). He may not do both because the two remedies are inconsistent and mutually exclusive; the special damages allowed on rescission are only those incidental to the contract and directly caused by the fraud, and are not to be confused with damages which may be recovered when an election is made to affirm the contract. Kent Homes, Incorporated v. Frankel, D.C.Mun.App., 128 A.2d 444 (1957). By treating the property as his own and affirming the contract through continued performance, the defrauded party is precluded from seeking rescission. Campbell Music Co. v. Singer, D.C.Mun.App., 97 A.2d 340 (1953); Orrison v. Ferrante, D.C.Mun.App., 72 A.2d 771 (1950). But performance of contractual obligations after knowledge of the fraud, of itself, establishes neither waiver nor an intent by the defrauded party to waive the remedy in tort as a matter of law. United Securities Corporation v. Franklin, D.C.Mun.App., 180 A.2d 505, 510 (1962). Were we to accept the minority rule urged by appellee and deny recovery in tort for damages resulting from fraud where the contract is partially executed and the defrauded party has continued to perform after knowledge of the fraud, we would make further misrepresentation attractive. See generally Annot., 13 A.L.R.2d 807 et seq. The party perpetrating the fraud would be able to escape civil liability and retain the benefits of his wrongdoing by persuading the defrauded party to continue performance. Furthermore by limiting the remedy for fraud to rescission where the contract is partially executed, the victim of the fraud would have the very great burden of refraining from doing any act which might be interpreted as being in further performance of his contractual obligations. If there is to be a choice between automatic waiver of a cause of action for fraud and waiver only if the jury finds that such was the intent of the defrauded party, our choice must favor the victim. Where the contract is wholly executory and the defrauded party insists on performance after knowledge of the fraud, damages in tort

may not be recovered. Simon v. Rossier, D.C.Mun.App., 127 A.2d 394 (1956). But this exception is necessary in such a rare circumstance to prevent recovery for self-inflicted damages, and even here waiver may not be found if the defrauded party was unable to recede from his situation without prejudice. Horning v. Ferguson, D.C.Mun. App., 52 A.2d 116 (1947).

■ If appellants did not ratify the alleged fraud and waive their defense and the basis of their counterclaim as a matter of law by performing after having knowledge of the fraud, did they, by their conduct, indicate an intention to abandon their remedy in tort? Unless reasonable men could only conclude that they did, the issue is a factual one which should have been submitted to the jury. The trial court took two principal factors into consideration in directing a verdict for appellee in its claim on the note and on the counterclaim. The first was appellants' delay in seeking redress; the second related to appellants' attempt to perform after the monthly payments were reduced by appellee. We will consider each in turn.

■ In United Securities the seller induced the buyers to enter into the contract by fraudulently representing the terms of the sale. When the misrepresentation was discovered, the buyers immediately brought the variance to the attention of the seller but were told in so many words that they were "stuck." We held that their attempt to continue performance did not prevent them from counterclaiming for damages when sued for failure to perform their obligations under the bargain. In the case presently before us, appellants upon discovering the alleged misrepresentation, did not complain or notify appellee of the variance in the terms of the agreement until three or four months later when they defaulted and the automobile was repossessed. However, unlike rescission, a remedy founded upon equitable principles, the remedy in tort for fraud is based upon the assumption that the fraudulent transaction is to stand, and

prompt action by the defrauded party is not required; delay in seeking redress is merely a factor which the jury may consider in determining whether there was in fact fraud and whether the defrauded party intended to abandon his remedy at law. 5 Williston On Contracts, § 1526.

■ The trial court, however, rested its finding of ratification and waiver of the alleged fraud primarily on appellants' conduct following the reduction in the monthly payments on the note held by appellee. After the automobile was repossessed appellants complained that the monthly payments were in excess of the terms of the sale as represented by Rosenberg. Appellee then adjusted the payments on the note it held from $75 to $65 per month, reducing the total monthly payment to $94 for the two notes. Despite their feeling that they had been defrauded and misled, and despite the fact that the payments were not reduced to $75 per month as they were told they would be, appellants sought to meet the $94 monthly payment. From this could reasonable men only conclude that appellants intended to abandon their remedy in tort for fraud and misrepresentation of the terms of the sale? We think not and are of the opinion that under the circumstances here the jury could have reasonably found that appellants accepted the reduced payments in mitigation or in the nature of a pro tanto satisfaction of the damages, and that by thereafter seeking to perform, they may not have intended to abandon their remedy at law and ratify the fraud so as to preclude them from recovering such alleged damages as were not satisfied.

The trial court properly held that by continuing to perform their contractual obligations after acquiring knowledge of the fraud, appellants waived their right to rescind. It erred, however, in taking the case from the jury and concluding as a matter of law that by their subsequent conduct appellants waived their remedy in tort for fraud.

■ We must now turn to our initial assumption, which was also made by the

trial court, and determine whether there was sufficient evidence of corporate identity and control from which the jury could reasonably find that appellee had actual or constructive knowledge of the business practices of Ross Discount Motors.

Rosenberg, who personally sold the automobile in question, was called by appellants and testified that in August 1959 he owned two-thirds of the stock of Ross Discount Motors, fifty percent of the voting stock of Lorain, which he assigned to the secretary of Lorain, and seventy percent of the non-voting stock of Lorain. He further testified that at the time of the sale he was either president or secretary of Ross Discount Motors, and that a "floor plan" existed through which Lorain financed the automobiles purchased by Ross Discount Motors. Moreover, eighty percent of the credit sales made by Ross Discount Motors was sent to Lorain for financing, although on cross-examination by appellee Rosenberg said only fifty percent of the credit sales was financed by it.

We are of the opinion that this evidence warranted the submission of the issue of actual or constructive knowledge to the jury. And when considered together with the fact that the $2,195 automobile will cost in excess of $3,500 if appellee prevails, it raises an additional factual issue: Was this a bona fide credit sale or a loan and a cloak for usury? See Brooks v. Auto Wholesalers, Inc., D.C.Mun.App., 101 A.2d 255 (1953).

Appellants contend that the trial court erred in admitting into evidence the note held by appellee. We cannot agree. Although the note contained on its face a variance in the amount, there was proof of its existence and the amount of the underlying debt. See DeBose v. Los Angeles Teachers Credit Union, D.C.Mun.App., 129 A.2d 700 (1957). It is further urged that the trial court erred in refusing to allow, as evidence of notice and an intent to defraud, complaints setting forth similar conduct in other cases filed against Ross Dis-

count Motors and appellee after the date of the transaction involved herein. However, we need not consider this question since both complaints have been dismissed, one for want of prosecution and the other with prejudice.

We consider the additional errors urged by appellants to be without merit.

Reversed with instructions to grant a new trial.

MYERS, J., was present at the argument of this appeal but did not participate in the decision.