**Lilly B. LEE, Appellant,**

v.

**FISCO ENTERPRISES, INC., OF WASHINGTON, D. C., also known as Fisco, Inc., of Washington, D. C., t/a Arthur Murray School of Dancing and Education Service Associates, Inc., Appellees.**

**No. 4036.**

District of Columbia Court of Appeals.

Argued April 24, 1967.

Decided Sept. 15, 1967.

---

1. See also Cooper v. Lish, 115 U.S.App.D.C. 291, 318 F.2d 262 (1963).

David Kayson, Washington, D. C., for appellant.

Cornelius H. Doherty, Washington, D. C., for appellees.

1. "Appellee" refers only to Arthur Murray School of Dancing. Education Service Associates, Inc., was assignee of the contract executed by appellant.

2. See also Myers v. Gaither, D.C.App., 232 A.2d 577, decided August 10, 1967; Paylor v. Safeway Stores, Inc., D.C.App., 225 A.2d 312 (1967), and cases cited therein.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

MYERS, Associate Judge:

In an action alleging fraud and misrepresentation in which appellant sought both compensatory and punitive damages, the trial court directed a verdict against appellant at the close of her evidence. This appeal followed. The single question of law presented is whether the case was properly taken from the jury.

Appellee's [1] motion to direct a verdict in its favor must be viewed as admitting every fact in evidence which tended to sustain appellant's case, together with every inference reasonably deducible therefrom. If there was any evidence from which the jury could have found for appellant upon proper instructions of law, the order directing a verdict was improper. Galt v. Phoenix Indem. Co., 74 App.D.C. 156, 157, 158, 120 F.2d 723, 724–725 (1941); Birchall v. Capital Transit Co., D.C.Mun. App., 34 A.2d 624, 625 (1943).[2] Thus, if any evidence of fraud was presented, or if reasonable inferences of fraud could have been drawn from appellant's evidence, she was entitled to have her case submitted to the jury. Johnson v. Harris, D.C.Mun. App., 110 A.2d 537, 538 (1955); Tucker v. Beazley, D.C.Mun.App., 57 A.2d 191 (1948).[3]

Actionable fraud has been defined as "the concealment of a fact which should have been disclosed, or * * * the repre-

3. See also Espaillat v. Berlitz Schools of Languages of America, Inc., D.C.App., 217 A.2d 655, 657 (1966). Further appeal allowed only on the issue of damages by order of the United States Court of Appeals for the District of Columbia Circuit. Rizzi v. Fanelli, D.C.Mun.App., 63 A.2d 872, 875 (1949). Cf. Cherner v. Hall, D.C.Mun.App., 161 A.2d 141 (1960).

sentation of the existence of a material fact which did not exist. That representation must be positively made knowing it to be false, or recklessly and positively made without knowledge of its truth. The party to whom the representation is made must not only be warranted in accepting it, but he must actually accept it, and, relying on its truth, act as contemplated by the party making it." Rosenberg v. Howle, D.C. Mun.App., 56 A.2d 709, 710 (1948).

█ The case before us presents a grim story of salesmanship and business methods designed to prey on the gullible, and of a victim who, through a series of contracts, became obligated to pay $6,257.00 (about one and one-half times her annual salary) for a course of dancing instruction. A contract is not invalid, however, merely because it is the result of high-pressure salesmanship; and one is not entitled to be extricated by the courts when, because of naiveté or poor judgment, he has become embogged in a morass of contractual obligations. But when one belatedly realizes his folly and seeks the aid of the judicial process, the court should not refuse to give relief where fraud had induced that folly.

Appellant, seeking part-time employment, responded to a "help wanted" newspaper advertisement placed by appellee which offered

### TEACHING CAREER WITH ARTHUR MURRAY

Fall training class for ballroom dancing instructors forming and given free to those who qualify.

1. Age 22–32.

2. College background or equivalent.

3. Interested in people.

Good opportunities for advancement due to expansion program. Arlington, Silver Spring, Bethesda, Washington areas. Income, $90 for 36 teaching hours. Apply in person. . . .

At the studio, appellant was interviewed by a Mr. Scheibert, one of appellee's "top-level executives," who told her she would have to take some lessons "to qualify." As they were represented as necessary to initiate her career as a dancing instructor, she contracted for 46 lessons, for which she paid $460.00. Within the next few weeks she was told by Scheibert and other studio "counselors" that she would need additional lessons. She then agreed to expand her course. Ultimately, in a series of contracts, some signed before fully incorporated on paper, she became obligated for $6,257.00. She testified that had she not believed she would be placed on the staff as a dancing instructor at the studio, she would not have continued the lessons. The prospect of employment was held out to her from time to time, and on various occasions she discussed the matter with her dancing "analyst" and representatives of the studio. At one point, when she explained she had no funds to meet her obligation, Scheibert suggested that she sell her house or borrow a portion of the amount due and pay the balance in periodic installments from the money she would receive "when she started teaching." In reliance that she would become a paid instructor, appellant continued her dancing course for approximately two years. About this time her daughter overheard a conversation between one of appellee's executives and an instructor indicating they were trying to mulct appellant of all the money they could. This prompted appellant, apparently in a final effort to ascertain whether she was to be placed on the studio staff as an instructor, to try to speak to appellee's president,[4] but she could not obtain an audience. She then stopped taking lessons.

4. In her deposition taken before trial, appellee's president denied that the studio had ever advertised they would teach applicants to become dancing instructors.

■ Although the facts related above would not compel a finding of fraud or deception, reasonable men could find that there was promise of employment and of free instruction, when in fact these representations were nothing more than a fraudulent inducement for appellant to enter into a series of contracts for dancing lessons; that appellant was misled by these representations, which the studio had no intention of fulfilling; and that the conduct of appellee amounted to a scheme to defraud her of substantial sums. In our judgment the evidence and all reasonable inferences to be drawn therefrom in favor of appellant presented a prima facie case of fraud which required submission of her case to the jury.[5]

Reversed and remanded for a new trial.

5. We do not reach the issue of whether the punitive damages claimed by appellant could properly be awarded. Although punitive damages are not favored in this jurisdiction, Brown v. Coates, 102 U.S.App.D.C. 300, 253 F.2d 36, 67 A.L.R.2d 943 (1958), they may be awarded if justified in the public interest for purposes of deterrent and warning. United Securities Corp. v. Franklin, D.C.Mun.App., 180 A.2d 505 (1962). When such justification exists, the award, if any, is within the discretion of the trier of fact under proper instruction. Cf. Riss & Co. v. Feldman, D.C.Mun.App., 79 A.2d 566 (1951).