James F. **MILLS** et al., Appellants,

v.

**COSMOPOLITAN INSURANCE AGENCY, INC., a corporation et al., Appellees.**

No. 79–413.

District of Columbia Court of Appeals.

Argued May 15, 1980.
Decided Oct. 15, 1980.

Louis Ginberg, Washington, D. C., with whom Louise Eighmie Turner, Washington D. C., was on the brief, for appellants.

Joseph F. Cunningham, Washington, D. C., with whom Martha W. McClellan, Washington, D. C., was on the brief, for appellees.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

NEWMAN, Chief Judge:

This is an appeal by plaintiffs, James F. Mills and Frances W. Crayton (appellants)

from a directed verdict in favor of defendants, Cosmopolitan Insurance Agency, Inc. and Z. Jerome Jontiff, Vice President of the agency. Plaintiffs brought the action in a single count alleging fraud, claiming that the defendants misrepresented that *both* collision *and* liability insurance were included in a policy they had purchased from the defendants for their automobile. Appellants now contend that the trial court erred by: (1) directing a verdict for appellees after the presentation of all the evidence and (2) dismissing Frances W. Crayton as a party plaintiff. We reverse on both issues.

I

Cosmopolitan, an insurance agency located and doing business in the District of Columbia, acts on behalf of insurance applicants who have difficulty acquiring coverage and attempts to obtain coverage for them. On December 17, 1975, appellant Mills and his mother, appellant Crayton, came to Cosmopolitan seeking liability insurance for a 1973 Mercury Cougar they had purchased at Handley Ford, Inc. They had obtained collision insurance through Handley with the collision premium payment for one year included in the purchase price of the automobile. As a result of appellees' efforts, the liability policy was subsequently issued by National Indemnity Insurance Co. Appellant Crayton was not named as an insured on either policy, although her name did appear as co-owner of the automobile.

On November 26, 1976, the defendant agency notified plaintiff Mills that the collision insurance was due to expire on December 17, 1976. The letter of renewal for the collision policy noted that the premium would be $279, an increase from $199 for the previous year. On December 17, 1976, appellants Mills and Crayton went to Cosmopolitan's office in order to renew their policy. Mrs. Crayton brought $200 with her in order to cover the cost.

There is considerable debate between the parties as to what was said during the negotiations immediately preceding the renewal of the policy. At trial, appellee Jontiff maintained that the appellants specifically indicated that they did not want collision insurance because it was too expensive. As a result, he recommended membership in the Cross Country Motor Club which appellants agreed to purchase. Although the Motor Club included expenses related to towing, bail bond, storage, accidental death and dismemberment, the policy did not provide collision insurance. Appellants then made two deposits—one for $64 and the other for $75—in order to obtain coverage, while Mr. Mills signed an application for the Motor Club.

Appellants at trial, in contrast, testified that they requested, were assured, and therefore assumed, that they would be receiving *both* collision *and* liability insurance. Furthermore, they maintained that appellees made no mention of the Cross Country Motor Club and instead affirmatively indicated that they would be "fully covered."

On December 31, 1976, appellant Mills was involved in an accident while driving his Mercury Cougar. After reporting the accident, appellants were informed by Cosmopolitan that they did not have collision insurance to cover damage to the car.

At trial, defendants moved for a directed verdict at the end of the plaintiffs' case. The motion was denied without prejudice. Defendants then proceeded to present their evidence. After the presentation of all the evidence, the trial court sua sponte dismissed appellant Crayton as a party plaintiff on the basis of lack of privity. Defendants at that time also moved for a directed verdict as to the remaining plaintiff, and the trial judge, concluding that plaintiff had not established a *prima facie* case of fraud, granted the motion for a directed verdict. This appeal followed.

II

A directed verdict may be granted " '[o]nly where the probative facts are undisputed and where reasonable minds can draw but one inference from them does the question [of a directed verdict] become one of law for the court.' " *Aylor v. Intercounty Construction Corp.*, 127 U.S.App.D.C.

151, 155, 381 F.2d 930, 934 (1967), quoting *Capital Transit Co. v. Bingman*, 94 U.S.App. D.C. 75, 76, 212 F.2d 241, 242 (1954). *See also Corley v. BP Oil Corp.*, D.C.App., 402 A.2d 1258, 1263 (1979) (directed verdict appropriate where " 'evidence is so clear that reasonable men could reach but one conclusion' "), quoting *Bauman v. Sragow*, D.C. App., 308 A.2d 243, 244 (1973); *Klein v. District of Columbia*, 133 U.S.App.D.C. 129, 132, 409 F.2d 164, 167 (1969) (directed verdict proper where " 'no reasonable man could reach a verdict in favor of the plaintiff' ") quoting *Shewmaker v. Capital Transit Co.*, 79 U.S.App.D.C. 102, 103, 143 F.2d 142, 143 (1944). Where "the case [however] turns on controverted facts and the credibility of witnesses, the case is peculiarly one for the jury," *Corley v. BP Oil Corp., supra* at 1263, quoting *Aylor v. Intercounty Construction Corp., supra*, 127 U.S.App.D.C. at 155, 381 F.2d at 934; *see also Capital Transit Co. v. Bingman, supra*, 94 U.S.App.D.C. at 76, 212 F.2d at 242, and the court should not intercede.

■ When applying this standard, the evidence must be construed in a manner most favorable to the party against whom the motion was made. *Corley v. BP Oil Corp., supra; Smith v. District of Columbia*, D.C.App., 399 A.2d 213 (1979); *Bauman v. Sragow, supra; Klein v. District of Columbia, supra*; 5A Moore's Federal Practice ¶ 50.02[1], at 50–53 (2d ed. 1980). The nonmoving party is therefore entitled to every legitimate inference from the evidence and neither the trial judge nor the appellate court on review is to evaluate the credibility of witnesses nor weigh the conflicting testimony. *Corley v. BP Oil Corp., supra; Marshall v. District of Columbia*, D.C.App., 391 A.2d 1374 (1978); *Klein v. District of Columbia, supra; Capital Transit Co. v. Bingman, supra*; 9 Wright & Miller, Federal Practice and Procedure: Civil § 2524 at 543–44 (1971). Thus, if a jury could reasonably return a verdict for the nonmoving party, the trial court may not direct the verdict. *Smith v. District of Columbia, supra* at 215.

■ These principles were applied in *Lee v. Fisco Enterprises, Inc. of Washington, D. C.*, D.C.App., 233 A.2d 44 (1967). In reversing the trial judge's grant of a directed verdict, we stated, "if any evidence of fraud was presented, or if reasonable inferences of fraud could have been drawn from appellant's evidence, she was entitled to have her case submitted to the jury." *Id.* at 45 (citations omitted). Even if the evidence did "*not compel a* finding of fraud or deception, [the fact that] reasonable men could find" such to be the case mandated a jury determination. *Id.* at 47 (emphasis added). *See also Johnson v. Harris*, D.C.Mun.App., 110 A.2d 537, 538 (1955) (reversal of trial court's grant of directed verdict where appellant alleged fraud and deceit holding "conflicting testimony required a weighing of the accuracy and reliability of the evidence, and this, of course, was a function of the trier of facts" (footnote omitted)); *Tucker v. Beazley*, D.C.Mun.App., 57 A.2d 191 (1948); *Rosenberg v. Howle*, D.C.Mun.App., 56 A.2d 709 (1948). The essential elements of a cause of action for fraudulent misrepresentations are: (1) a false representation; (2) in reference to material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) causing one to act upon the representations. *Bennett v. Kiggins*, D.C.App., 377 A.2d 57, 59 (1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

After reviewing the record in this case, we conclude that there was sufficient evidence of fraud to warrant the submission of the case to a jury. Testimony by the appellants, if believed by the jury, and the reasonable inferences from their evidence, established a *prima facie* case for recovery since that testimony covered each of the elements of the cause of action for fraud. *See Bennett v. Kiggins, supra*. Both appellants at trial testified that at the time the new policy was purchased they requested, were assured, and therefore assumed that they would receive collision as well as liability insurance. Specifically, Mr. Mills testified that he had been a party to the conversations between his mother and Z. Jerome Jontiff, Vice President of Cosmopolitan In-

surance Agency, Inc., where his mother was told that collision insurance would be included in the new policy. Specifically at trial he stated:

So he [Mr. Jontiff] told me that another insurance company, which is GEICO, would be handling my insurance from now on. You know. So my mother said well okay, well we just want to go ahead on and get it straight. I said well okay then. He said well GEICO will be handling *my liability and collision insurance from now on.*

Q. All right. And was there any further conversation that you recall about the kind of insurance that you would have?

A. No, naw, no. We just, we discussed, he already told me that we have, GEICO would be handling *my liability and collision insurance* from now on. [Tr. 23] (Emphasis added).

In response to the following questions, Mr. Mills testified further:

Q. When you were there with your mother and speaking to Mr. Jontiff on December 17th, 1976, was there any discussion between any of the three of you as to carrying collision insurance?

A. Yes, sir. He had, he had told me that, he had told me that GEICO would be handling my insurance policy, would be handling my insurance from now on, instead of Hamilton. *My collision insurance from now on instead of Hamilton.* [Tr. 26] (Emphasis added).

Mr. Mills also responded:

Q. Okay. Now, did you hear your mother say anything in that conversation about the policies on December 17th, 1976?

A. Only thing I heard my mother said was well, *I just want to make sure we fully covered.* He [Mr. Jontiff] *said don't worry, he said you're fully covered.* He said I just want to get this contract to go so you can go ahead and sign and you be on your way. [Tr. 27]

At trial, Frances Crayton also testified that she specifically requested collision in-

surance and thought she was receiving that coverage. At trial she stated:

Q. And was anything said about the kind of insurance that you were going to get?

A. No, he didn't say. *I asked him I want liability* and *collision.* I wanted protection on both cars. I repeated that twice.

Q. All right. You said—repeat that, please.

A. I said I want insurance on both cars. I want *full coverage* for both cars.

Q. And what did Mr. Jontiff say?

A. He said okay.

Q. Okay. And you say you said that twice?

A. Twice, so he could understand it. I didn't whisper either.

Q. All right. And then he gave you the two small receipts.

A. Gave me two small receipts. One for 75 and one for 65.

Q. Did you read the receipts?

A. No, I didn't read them.

Q. All right.

A. I was so happy to pay, I thought, I thought he being honest and would give me the right insurance.

THE COURT: Just answer the question, Ma'am.

THE WITNESS: Okay.

BY MR. GINBERG:

Q. All right. Let me ask you this, Mrs. Crayton. Was anything said about a club insurance at that time?

A. No. Nothing.

Q. Did Mr. Jontiff say anything to you about a Cross Country insurance?

A. No. [Tr. 104–05] (Emphasis added).

Despite this evidence the trial judge ruled as a matter of law that appellants had the duty to be diligent, read the contract, and apprise themselves of the fact that the Cross Country Motor Club did not provide them with collision insurance. Finding that

appellants did not read the contract, he directed a verdict against them.[1]

■ An insured is obliged to read any papers dealing with requested or ordered insurance and is therefore deemed to know the contents of the forthcoming policy. *Metropolitan Life Insurance Co. v. Johnson*, D.C.App., 363 A.2d 984 (1976); 17 J. Appleman, Insurance Law and Practice § 9405 (1945). Such a duty may be excused if the insured is induced to sign the contract without reading it as the result of a misrepresentation by the insurer. *Saylor v. Handley Motor Co.*, D.C.Mun.App., 169 A.2d 683 (1961); *Hill v. Marston*, 65 App.D.C. 250, 82 F.2d 856 (1936); *Stern v. Moneyweight Scale Co.*, 42 App.D.C. 162 (1914). *See also Metropolitan Life Insurance Co. v. Johnson, supra.* Furthermore, a party who alleges fraud is not restricted to seeking rescission of the contract, but instead may sue and seek damages resulting from the misrepresentation. *Millard v. Lorain Investment Corp.*, D.C.Mun.App., 184 A.2d 630 (1962); *United Securities Corp. v. Franklin*, D.C.Mun.App., 180 A.2d 505 (1962). Thus appellants in this case are not barred *as a matter of law* from prevailing on a fraud theory because they neglected to read the receipts.

■ In addition, the mere fact that appellees presented evidence which contradicted appellants' assertion that they were fraudulently induced into entering the contract, does not mean the trial court could properly direct a verdict for the appellees. Simply because the testimony permitted two possible conclusions "does not necessarily . . . [suggest] that the evidence is not substantial and is not sufficient to sustain the jury's finding." *Baltimore & O. R. Co. v. Postom*, 85 U.S.App.D.C. 207, 208–09, 177 F.2d 53, 54–55 (1949).[2]

1. When granting the motion for a directed verdict, the trial judge stated:

   [T]he crux of this case is the collision policy, which the plaintiffs said they expected to be issued by the defendant. Of course, the defendant denies that and that isn't for us to decide who's telling the truth on it. But we do have evidence showing that if Mr. Mills had been diligent, he would have found out, he'd have reason to question if such a statement had been that they had collision insurance. He would have the right to question the agent when he signed this membership application for membership in the Cross Country Motor Club.

   He was not a person, shall we say, naive in the way of insurance, because he'd had four accidents during the past year, some $2000 had been paid out. So he's very conscious of the importance of having collision insurance. So when he paid $75 for what he says purports to be and which he was told was a collision policy, all he had to do was look at the document he signed, the membership application and say, well, what does this mean. I don't see anything on here about collision insurance. And in the receipt that he got for $75, there's nothing on there. It says Cross Country Motor Club, Tiffany Plan. There's nothing on there. And that 75 is what he's supposed to be paying for collision insurance. Yet there's no question about he had it in his possession for some weeks after the accident. He said he didn't read it.

   So, the law requires you to be diligent. And I'm not going to say Mr. Mills wasn't diligent. You can draw your own conclusions as to that. All I can say is he was not naive insofar as the collision insurance was concerned. And the law requires you to read what you sign. And if you don't you're responsible for it. There are certain qualifications, qualifications to that. But I've gone into some detail here to explain to you in a brief way, why we've reached the conclusions we have after considerable debate in our own mind about it.

   The Court is not required to explain to a jury why it directs a verdict, but I think in fairness to you, in order to give you some reasons why we've reached this conclusion. And those are some of the reasons.

   So, based upon the evidence here, we find that the, that the case does not warrant consideration by the jury because the matter of law, is our view, that the plaintiff has not established a prima facie case of fraud. [Tr. 155–59]

2. At trial, appellee Jontiff testified that he explained to the appellants that due to previous accidents, the cost of retaining collision insurance would be significantly higher than what they were now paying. As a result, appellee stated that Mrs. Crayton indicated that she did not want collision insurance. Anne Krone, office manager of the Cosmopolitan Insurance Agency when appellants were negotiating the policy, also testified that Mrs. Crayton stated that collision insurance was "more than they were in a position to pay." Mr. Jontiff further stated that he warned appellants several times before leaving the office on December 17, that they should have collision insurance. According to his testimony, it was only after it became

Appellees further argue that the trial court's direction of a verdict was proper since appellants' allegation of fraud required proof beyond the traditional preponderance of the evidence standard.[3] Regardless of the standard of proof, however, the role of the trial judge remains the same when considering a motion for a directed verdict. *Nader v. de Toledano*, D.C.App., 408 A.2d 31, 42 & n.6 (1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). More specifically, the judge must consider whether a reasonable jury could find for the nonmoving party pursuant to the appropriate burden of proof. *Id.* Thus while a more rigorous standard of proof may ultimately affect whether or not the plaintiff has presented enough evidence to persuade the jury, it does not control whether sufficient evidence has been presented to warrant submission of the case to the jury. Therefore, we hold the trial judge erred in directing a verdict against the appellants.

### III

Appellant Crayton also contends that it was error for the trial judge to dismiss her as a party plaintiff. After the presentation of all the evidence, the trial judge sua sponte dismissed that case as to Crayton, explaining that since only Mills signed the insurance contract, he was the only party entitled to maintain the action for fraudulent misrepresentation. Finding error, we reverse and order that Crayton be reinstated as a plaintiff.

Privity of contract is not a prerequisite to recovery where the plaintiff establishes fraudulent misrepresentation. *Nader v. Allegheny Airlines, Inc.*, 167 U.S.App. D.C. 350, 512 F.2d 527 (1975), *rev'd on other grounds*, 423 U.S. 946 (1976); *Peerless Mills, Inc. v. American Telephone & Telegraph*

*Co.*, 527 F.2d 445, 450 (1975) (defendant liable if plaintiff "can establish that he relied upon . . . [the misrepresentation] to his detriment, and that defendants intended the misrepresentation to be conveyed to him") (footnote omitted); *Countryside Casualty Co. v. Orr*, 523 F.2d 870, 873 (8th Cir. 1975) (in a suit for fraudulent misrepresentation defendant liable "to those he intends to influence and to those he has reason to expect to act in reliance upon the misrepresentation") (citations omitted); *Landy v. Federal Deposit Ins. Corp.*, 486 F.2d 139, 169 (3d Cir. 1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974) (defendant liable "to all those persons whom he should reasonably have foreseen would be injured by his misrepresentation") (footnote omitted). "[T]he generally accepted rule . . . [is] that the maker of a fraudulent misrepresentation is liable to those he intends to influence." *Nader, supra* 167 U.S. App.D.C. at 370, 512 F.2d at 547. Thus, if one "believes that another is substantially certain to act in a particular manner as a result of a misrepresentation [he is considered to have intended the result] although he does not act for the purpose of causing it and does not desire to do so." Restatement (Second) of Torts § 531, Comment c (1977).

After reviewing the record in this case, we conclude that a jury could reasonably find that Mrs. Crayton was within the class of persons Cosmopolitan Insurance Agency, Inc. allegedly intended to influence. Appellees concede that they were aware that as a joint purchaser of the car and co-obligor for the financed purchased price, Crayton had an insurable interest in it. It is further undisputed that she was present at the critical December 17 meeting when the new policy was purchased. Since

apparent that appellants did not intend to renew the collision policy that he suggested membership in the Motor Club. Thereafter appellants agreed to the Motor Club coverage and signed the application.

**3.** In an action for fraud, "plaintiff must prove each element of the claim by clear and convincing evidence." *Nader v. de Toledano*, D.C. App., 408 A.2d 31, 42 (1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). *See also Bennett v. Kiggins, supra; Zoslow v. National Savings & Trust Co.*, 91 U.S.App.D.C. 391, 201 F.2d 208 (1952); *Wynne v. Boone*, 88 U.S.App.D.C. 363, 191 F.2d 220 (1951).

appellant Crayton was a party to the negotiations in which the alleged misrepresentations were uttered and had an insurable interest in the car a jury could reasonably conclude that appellees intended that she rely on the statements concerning coverage.

*Reversed.*

KERN, Associate Judge, dissenting in part and concurring in part:

The trial court at the conclusion of the evidence, and after hearing argument on appellees' *motion to dismiss appellants'* complaint for fraud, commented concerning this case (Record at 284):

> I've been troubled by it. If you weigh it in the context of the ordinary case, so far as the preponderance of evidence is concerned, I wouldn't have any doubt as to what we should do in the matter. But this is a case of fraud. And it takes on a higher degree, it takes a higher degree of proof to establish than the facts in an ordinary case.

The court went on to set forth the burden of proof placed upon appellants' here (Record at 285–86):

> In a civil case, the plaintiff must generally prove the essential elements of his claim by preponderance of the evidence. But when a claim for fraudulent misrepresentation is presented, the burden upon the plaintiff to prove every essential element of his claim, not simply by preponderance of the evidence, but by clear and convincing and unequivocal evidence.
>
> A fraudulent representation cannot be established by evidence which is so equivocal as to be equally consistent with honesty as with deceit. Proof merely of suspicious circumstances is not enough. It is not necessary, however, the element of fraud and misrepresentation be proved by the direct evidence.
>
> Fraudulent misrepresentation frequently is not susceptible to direct proof. And may be established by reasonable inferences deducible from the evidence.

But where the proof be direct or circumstantial, or both, every essential element of fraudulent misrepresentation must be proved by clear, convincing and unequivocal evidence before the plaintiff may recover.

The court concluded (Record at 288):

> Well, I don't feel that I can submit this case to the jury, based on law as we see it. I think the evidence is clear that it's not an ordinary case where preponderance of the evidence controls. If it was, why I'd have no hesitancy in submitting it to the jury. But we have to go beyond the preponderance of the evidence, according to the law as we understand it.

Finally, the court instructed the jury (Record at 157):

> So, based upon the evidence here, we find that the, that the case does not warrant consideration by the jury because the matter of law, is our view, that the plaintiff has not established a prima facie case of fraud. Which, again, I repeat to you, has to be proved by unequivocal evidence, not merely by a preponderance of the evidence.

The trial court in my view was correct in its statement of the degree of proof appellants needed to present in support of their allegation of fraud on appellees' part, *Bennett v. Kiggins*, D.C.App., 377 A.2d 57, 59 (1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978), and the prima facie showing they were required to make in order to avoid the grant of a directed verdict against them. *Nader v. de Toledano*, D.C.App., 408 A.2d 31, 42 n.6 (1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). Given the undisputed evidence that appellees, who were in the business of selling insurance,[1] reminded appellants on more than one occasion that their auto liability and collision insurance was about to expire, the documentary evidence consisting of appellants' applications for insurance and receipts received by ap-

---

1. As appellees' counsel put it (Record at 297): [T]hey're not in business to defraud their customers and keep this business insurance away from them. They're in business to sell it.

pellants upon purchasing insurance from appellees that make no reference at all to collision coverage, and the concededly substantial knowledge of appellant Mills about collision insurance as to the result of numerous accident he had had, I agree with the trial court that reasonable jurors could not have found fraud under the unusual circumstances here.[2]

Accordingly, I dissent from the majority's reversal. However, I agree that if the case goes to the jury, then appellant Crayton should not be dismissed as a party plaintiff and hence I concur to this extent with the majority.

---

2. Appellees pointedly argued (Record at 295 96):

[I]f you're going to allege fraud and get to the jury, it's the end of the insurance agencies in this city.... And then, particularly when you're talking about collision insurance, and then an accident occurs, and the light bulb goes on and they say, hey, that's really what I needed and who's going to say I could at least get to the jury to let them make a determination as to whether I have, have a claim for fraud in terms of this coverage that I didn't want, but now I decided I need it because I have an accident. That type of after the fact rationalization is totally destructive, Your Honor, to the type of business these people are in.